UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID M. MALTINSKY<br><br>*Plaintiff*,<br><br>v.<br><br>KASHYAP P. PATEL, in his official capacity as Director, Federal Bureau of Investigation, United States Department of Justice, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-04031-RJL |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

I.  Factual Allegations ......................................................................................... 1

II. Procedural History .......................................................................................... 3

LEGAL STANDARDS ............................................................................................................ 3

ARGUMENT ............................................................................................................................ 4

I.  Plaintiff's Fifth Amendment Claims Should Be Dismissed ................................... 4

II. Plaintiff's Mandamus Claim Should Be Dismissed ............................................... 7

III. Plaintiff's Request for Back Pay and Other Monetary Relief Is Barred by Sovereign Immunity ................................................................................................ 8

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011) ............................................................ 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 4

*Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) ............................................................ 5, 6

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ............................................................ 9

*Brown v. GSA*, 425 U.S. 820 (1976) ............................................................ 5, 6

*Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) ............................................................ 6

*Consol. Edison Co. v. Ashcroft*, 286 F.3d 600 (D.C. Cir. 2002) ............................................................ 7

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ............................................................ 4

*Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405 (D.C. Cir. 1985) ............................................................ 5

*FDIC v. Meyer*, 510 U.S. 471 (1994). ............................................................ 4

*Gillet v. King*, 931 F. Supp. 9 (D.D.C. 1996) ............................................................ 6

*Harris v. Bessent*, No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) ............................................................ 7

*Heckler v. Ringer*, 466 U.S. 602 (1984) ............................................................ 7

*Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc) ............................................................ 8, 9

*In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) ............................................................ 7

*In re Nat'l Nurses United*, 47 F.4th 746 (D.C. Cir. 2022) ............................................................ 7

*Jenkins v. Howard Univ.*, 123 F.4th 1343 (D.C. Cir. 2024) ............................................................ 4

*Kizas v. Webster*, 707 F.2d 524 (D.C. Cir. 1983) ............................................................ 5, 6

*McKoy v. Spencer*, 271 F. Supp. 3d 25, 34 (D.D.C. 2017) ............................................................ 10

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ............................................................ 6

*Richardson v. Wiley*, 569 F.2d 140 (D.C. Cir. 1977) ............................................................ 5

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ............................................................ 7

*Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005) .......................................................... 4

*United States v. Fausto*, 484 U.S. 439 (1988) ............................................................ 9, 10

*United States v. King*, 395 U.S. 1 (1969) ......................................................................... 8

*United States v. Mitchell*, 463 U.S. 206 (1983) ................................................................ 8

*United States v. Testan*, 424 U.S. 392 (1976) .................................................................. 8

*Weber v. Department of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008) ..................... 10

**Statutes**

28 U.S.C. § 1361 ............................................................................................................ 1, 7

42 U.S.C. § 2000e-16 ......................................................................................................... 5

42 U.S.C. § 2000e-2 ....................................................................................................... 5, 6

42 U.S.C. § 2000e-3 ........................................................................................................... 5

5 U.S.C. § 2108 ................................................................................................................ 10

5 U.S.C. § 5596 .................................................................................................................. 9

5 U.S.C. § 702 .................................................................................................................... 9

5 U.S.C. § 7511 ................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1, 4, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 3

**INTRODUCTION**

Plaintiff David Maltinsky, a former Federal Bureau of Investigation (FBI) employee, alleges that he was removed from federal service in violation of his rights under the First and Fifth Amendments to the Constitution. His Complaint asserts six counts. Three of those counts fail to state a claim upon which relief can be granted and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Counts Three and Four allege violations of the Fifth Amendment. But both represent claims of employment discrimination based on sexual orientation and thus should be dismissed because Congress has provided a comprehensive and exclusive remedial scheme for such claims through Title VII of the Civil Rights Act of 1964, thereby displacing any remedies under the Constitution. Count Six seeks a writ of mandamus under 28 U.S.C. § 1361 directing Plaintiff's reinstatement, but it too should be dismissed for failure to satisfy the strict requirements for relief under § 1361. Finally, Plaintiff's request for back pay and other monetary relief is barred by sovereign immunity in the absence of an applicable statutory waiver and should be dismissed on that basis under Federal Rule of Civil Procedure 12(b)(1).

**BACKGROUND**

**I.      Factual Allegations**

Plaintiff was employed by the FBI for approximately sixteen years. Compl. ¶¶ 1, 10–14, ECF No. 1. Prior to his removal, he worked in an intelligence position at the FBI's Los Angeles Field Office (LAFO). *Id.* ¶¶ 1, 4, 12–13. In June 2025, he left the LAFO and began training for the position of Special Agent at the FBI's Basic Field

1

Training Course at Quantico, Virginia. *Id.* ¶ 14. He had completed sixteen of nineteen weeks of training when he was removed in October 2025. *Id.* ¶ 15.

Plaintiff alleges that while he was employed at the LAFO, he participated in and ultimately led the FBI's internal diversity, inclusion, and equal employment initiatives as part of his collateral duties. *Id.* ¶¶ 2, 22–24. Plaintiff alleges that he undertook these efforts "to help the FBI achieve mission success" and to strengthen the Bureau's workforce. *Id.* ¶ 22. He served on the FBI's "Diversity Advisory Committee," was elected the chairperson of the "Bureau Equality Committee," provided policy advice "on diversity, equity, inclusion, and accessibility" to FBI leadership, "led efforts to identify and oppose discrimination on the basis of sexual orientation within the FBI," and "served as an advisor to different components throughout the FBI concerning LGBTQIA+ issues." *Id.* ¶ 22–24. In 2022, he received an "Attorney General's Award" for performance in support of the Equal Employment Opportunity Program. *Id.* ¶ 2.

Plaintiff alleges that, in June 2021, government agencies were authorized to display Pride flags outside federal facilities, and to that end, the FBI commissioned and flew on the LAFO's main flagpole a 3-foot by 5-foot Progress Pride flag for three days, followed by a 5-foot by 8-foot traditional rainbow Pride flag for two days. *Id.* ¶ 25. After they were lowered, an FBI official at the LAFO "directed [Plaintiff] to receive and maintain the pride flags." *Id.* ¶ 26. The flags were "entrusted to [Plaintiff]" "[i]n special recognition of [his] efforts to improve the FBI" through its diversity initiatives. *Id.* ¶ 2. From July 2021 to June 2025, Plaintiff displayed the 3-foot by 5-foot Progress Pride flag at his FBI workstation. *Id.* ¶ 27.

2

Plaintiff alleges that he was removed from federal service due to his prior display of the flag at his workstation. *Id.* ¶¶ 27, 40, 42. Plaintiff further alleges that the FBI had permitted other employees to display various symbols or items at their workstations without disciplinary action, and that his removal therefore constituted discrimination and retaliation in violation of the First and Fifth Amendments. *Id.* ¶¶ 47–70.

## II.    Procedural History

Plaintiff filed the Complaint in this matter on November 19, 2025. ECF No. 1. The Complaint asserts six causes of action arising from Plaintiff's removal from FBI employment. The First and Second Causes of Action allege violations of the First Amendment, asserting retaliation for protected expression and impermissible viewpoint discrimination. Compl. ¶¶ 47–57. The Third and Fourth Causes of Action arise under the Fifth Amendment and allege equal protection violations based on Plaintiff's sexual orientation. *Id.* ¶¶ 58–70. The Fifth Cause of Action seeks declaratory relief under 28 U.S.C. §§ 2201–02. *Id.* ¶¶ 71–72. The Sixth Cause of Action seeks a writ of mandamus under 28 U.S.C. § 1361 directing Defendants to set aside Plaintiff's termination and reinstate him. *Id.* ¶¶ 73–75.

Plaintiff's prayer for relief seeks declaratory, injunctive, and mandamus relief, reinstatement, back pay and benefits, prejudgment interest, attorney's fees, and other relief the Court deems appropriate. *Id.* at 16–17.

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate if, assuming the truth of all well-pled factual allegations, Plaintiffs have failed to state a claim upon which relief can be granted. To pass muster, a complaint must contain "sufficient factual matter" to "state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" warrants dismissal. *Id.* (quoting *Twombly*, 550 U.S. at 557). Although a court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff, it need not accept "legal conclusions" or "mere conclusory statements." *Id.*

Dismissal under Rule 12(b)(1) is appropriate if the party asserting subject matter jurisdiction fails to meet "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

## ARGUMENT

### I. Plaintiff's Fifth Amendment Claims Should Be Dismissed

The Court should dismiss Plaintiff's Fifth Amendment claims (Counts Three and Four). Compl. ¶¶ 58–70. Although styled as constitutional claims, they are, in substance, claims of employment discrimination based on sexual orientation. Because Congress has provided a comprehensive and exclusive remedial scheme through Title VII of the Civil Rights Act of 1964, those claims must be dismissed.

4

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2, 2000e-3 (1976). Under Title VII, discrimination "because of . . . sex," *id.* § 2000e-2(a)(1), includes discrimination based on sexual orientation, *see Bostock v. Clayton County, Georgia*, 590 U.S. 644, 650–52 (2020). Section 717 of Title VII extends the statute's protections to federal employees, including the FBI. 42 U.S.C. § 2000e-16(a). The Supreme Court has held that Title VII constitutes the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. GSA*, 425 U.S. 820, 829 (1976). Accordingly, Title VII "provides the exclusive judicial remedy for claims of discrimination in [covered] federal employment." *Id.* at 835.

The D.C. Circuit has repeatedly applied this rule, holding that covered federal employees may not bypass Title VII by recasting discrimination claims as constitutional violations. *See, e.g.*, *Kizas v. Webster*, 707 F.2d 524, 541–43 (D.C. Cir. 1983) (rejecting Fifth Amendment claims brought by FBI employees because Title VII provides the exclusive remedy); *Richardson v. Wiley*, 569 F.2d 140, 141 (D.C. Cir. 1977) (per curiam) (holding that a federal employee covered by Title VII may not sue under any other federal statute or under the Fifth Amendment). The D.C. Circuit has recognized that allowing federal employees to recast their Title VII claims as constitutional claims would "clearly threaten" the legislative policies underlying Title VII's comprehensive procedural and remedial framework. *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985).

As an FBI employee at the time of his removal, Plaintiff falls within Title VII's coverage, and Counts Three and Four are claims of employment discrimination within

Title VII's scope. In Count Three, Plaintiff alleges that Defendants retroactively targeted him for displaying the Progress Pride flag after allegedly allowing similar displays in the past. Compl. ¶¶ 58–64. In Count Four, he alleges that he is a gay man and that Defendants discriminated against him on the basis of his sexual orientation. *Id.* ¶¶ 65–70. In short, both Counts assert that Plaintiff was targeted and removed from federal employment because of his sexual orientation or because of conduct reflecting that status.

Removal from employment is an adverse action affecting the "terms, conditions, or privileges of employment" within the meaning of Title VII. 42 U.S.C. § 2000e-2(a)(1); *see Chambers v. District of Columbia*, 35 F.4th 870, 874–75 (D.C. Cir. 2022). Moreover, discrimination on the basis of sexual orientation constitutes discrimination "because of . . . sex" under Title VII. 42 U.S.C. § 2000e-2(a)(1); *see Bostock*, 590 U.S. at 650–52. Plaintiff's own allegations—that he is a gay man and that Defendants took adverse action against him because of that status—describe precisely the type of claim Title VII governs. Such claims must be properly exhausted prior to bringing a lawsuit in federal court or are subject to dismissal. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002); *Gillet v. King*, 931 F. Supp. 9, 12–13 (D.D.C. 1996).

Although Plaintiff labels these allegations as violations of "equal protection" under the Fifth Amendment, the precedent is clear that Title VII supplies the exclusive cause of action and provides the exclusive remedies for such claims. *See Brown*, 425 U.S. at 835; *Kizas*, 707 F.2d at 541–43. Because Counts Three and Four assert discrimination claims fully cognizable under Title VII, Plaintiff may not pursue them directly under the Fifth Amendment. Those causes of action should therefore be dismissed.

6

## II.     Plaintiff's Mandamus Claim Should Be Dismissed

The Court should dismiss Coun Six, which seeks a writ of mandamus under 28 U.S.C. § 1361 compelling Defendants to set aside his termination and reinstate him. *Id.* ¶¶ 73–75. Mandamus is a "drastic" and "extraordinary" remedy, reserved for exceptional circumstances. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). To obtain mandamus relief, a plaintiff must demonstrate: (1) a clear and indisputable right to relief; (2) a clear, nondiscretionary duty on the part of the defendant; and (3) the absence of any other adequate remedy. *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002).

Plaintiff fails every step of this analysis. To start, Plaintiff has not identified any such ministerial duty. The selection, training, and retention of potential FBI agents is not a mere ministerial task. *See* Compl. ¶ 14. Nor has Plaintiff established a clear right to such relief. To the contrary, the D.C. Circuit has recognized that the availability of such relief poses "complicated and exceptionally difficult questions regarding the constitutional relationship between the judiciary and the executive branch." *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996); *see also id.* at 978 (explaining the D.C. Circuit has "never attempted to exercise power to order the President to perform a ministerial duty"); *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *6 n.4 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting) ("*Swan* says nothing about when it would be appropriate to impose mandamus."). Likewise, Plaintiff has not established that Defendants owe him a "clear nondiscretionary duty," *Heckler v. Ringer*, 466 U.S. 602, 616 (1984), or that some other form of remedy is not adequate or appropriate in this case. Accordingly, the Court should dismiss Plaintiff's Sixth Cause of Action.

7

### III. Plaintiff's Request for Back Pay and Other Monetary Relief Is Barred by Sovereign Immunity

Even if any constitutional claim survived dismissal, Plaintiff's demand for monetary relief, including "back pay," "other monetary" relief, and "prejudgment interest" must be dismissed independently because the United States has not waived sovereign immunity for such remedies.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent must be "unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969).

The D.C. Circuit has squarely held that federal employees may not recover back pay on constitutional claims absent a statutory waiver. In *Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (en banc), the court held that back pay is unavailable for constitutional claims "because Congress has not expressed an unequivocal intent to waive sovereign immunity for such relief." *Id.* at 532. There, the plaintiff alleged that he was not selected for a government job in retaliation for protected speech under the First Amendment and sought relief to include "instatement" and back pay. *Id.* The court held that instatement constitutes specific equitable relief, but that back pay or any other monetary relief to redress a loss of income flowing from the alleged constitutional violation constitutes compensatory relief, *i.e.*, "money damages". *Id.* at 533–34; *see also United States v. Testan*, 424 U.S. 392, 404 (1976) (describing a claim for back pay as one for "money damages"). Because no statute waived sovereign immunity for such monetary relief for the plaintiff's constitutional claims, the court held that the request for back pay was barred. *Hubbard*, 982 F.2d at 534.

8

Plaintiff's request for relief in this case is materially indistinguishable from that in *Hubbard*. Plaintiff seeks reinstatement plus "backpay, benefits, and other monetary and administrative relief, plus prejudgment interest." Compl. at 16–17. Under *Hubbard*, this Court must construe Plaintiff's request for reinstatement as specific relief and his request for backpay and other monetary relief as money damages. As explained below, because there is no statutory waiver of sovereign immunity for money damages applicable here, back pay and other monetary relief is barred.

The Administrative Procedure Act (APA) does not supply a waiver of sovereign immunity for back pay in this case. The APA waives sovereign immunity in suits challenging agency action for "relief other than money damages." 5 U.S.C. § 702. In *Hubbard*, the D.C. Circuit rejected the argument that back pay fell within the scope of equitable relief that the Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 879 (1988) distinguished from "money damages" in the APA context. *See Hubbard*, 982 F.2d at 536–37. Thus, it is well settled that the APA does not provide a waiver of sovereign immunity for a back pay award in this case.

Further, Plaintiff cannot invoke the Back Pay Act, 5 U.S.C. § 5596, to establish a waiver of sovereign immunity. The Back Pay Act provides relief only when an employee "on the basis of a timely appeal or an administrative determination," is found by an "appropriate authority" under applicable law to have been subjected to an unjustified personnel action. 5 U.S.C. § 5596(b)(1). And in *United States v. Fausto*, 484 U.S. 439 (1988), the Supreme Court held that the Back Pay Act does not independently create a waiver of sovereign immunity for employees whom Congress excluded from the Civil Service Reform Act's (CSRA) remedial framework. *Id.* at 454. An "appropriate

9

authority" under the Back Pay Act refers to a body authorized by the CSRA to review personnel actions—such as the agency, the Merit Systems Protection Board, or the Federal Circuit—not a district court adjudicating constitutional claims. *Id.*; *accord Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008) ("[T]he district court, like the Claims Court in *Fausto*, was not an 'appropriate authority' when it made its determination."). Moreover, as an FBI employee who does not otherwise allege "preference-eligible" status under the CSRA, *see* 5 U.S.C. § 2108(3), Plaintiff is excluded from the CSRA's remedial scheme, *id.* § 7511(b)(8). Thus, there has not been (and cannot be) a determination by an "appropriate authority" within the scope of the Back Pay Act to create a waiver of sovereign immunity here.

Under Rule 12(b)(1), it is proper for this Court to dismiss Plaintiff's requests for monetary relief where such relief is barred by sovereign immunity. *See, e.g.*, *McKoy v. Spencer*, 271 F. Supp. 3d 25, 34 (D.D.C. 2017) (allowing APA claims to proceed but ruling that "[t]o the extent Plaintiff requests money damages under those claims, those requests are dismissed"). Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's request for back pay and any other monetary relief, as such relief is barred as a matter of law.

*******

## CONCLUSION

For these reasons, the Court should grant Defendants' partial motion to dismiss.

Dated: February 19, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ *Natalie M. Villalon*
NATALIE M. VILLALON
DC Bar No. 90015127
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 860-9963
Email: Natalie.M.Villalon@usdoj.gov

*Counsel for Defendants*