**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

DAVID M. MALTINSKY[1]

     *Plaintiff*,

     *v.*

KASHYAP P. PATEL
in his official capacity as
Director of the Federal Bureau of Investigation
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

TODD BLANCHE
in his official capacity as Acting Attorney
General of the United States
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

and

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530,

     *Defendants*.

----------------------------------------------------------------

Civil Action No. 25-CV-4031

**JURY TRIAL DEMANDED**

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address was filed under seal with the Court in a separate Notice of Filing.

1

**FIRST AMENDED COMPLAINT**

I.   **INTRODUCTION**

1.   On September 11, 2001, Plaintiff David Maltinsky ("Maltinsky") was 11 years old. In the months following the September 11th attacks, he determined that, someday, he would serve his country as a Special Agent with the Federal Bureau of Investigation ("FBI"). In 2008, Maltinsky took the first step in that journey, volunteering as an intern assigned to the FBI's Los Angeles Field Office ("LAFO"). On August 16, 2009, Maltinsky entered public service, joining the FBI as a full-time employee in an operational support role assigned to a team investigating public corruption in greater Los Angeles. In 2014, Maltinsky was promoted to serve as a staff operations specialist, an intelligence role in which he supported the FBI's efforts to prevent and combat cyber-attacks against the United States.

2.   On June 12, 2016, 49 people were killed and 58 people were wounded in a mass shooting at the Pulse nightclub in Orlando, Florida. Maltinsky, a gay man, was horrified by the Pulse nightclub attack. In response to the shooting, he resolved to support the FBI's then existing diversity initiatives, which he hoped, in turn, would strengthen the FBI's capacity to prevent and respond to such attacks in the future. The FBI encouraged and honored Maltinsky's work by awarding him the 2020 Director's Award for Excellence – Outstanding Service in Diversity and Inclusion. In 2022, the Attorney General for the Department of Justice ("DOJ") awarded Maltinsky the Attorney General's Award for Equal Employment Opportunity, DOJ's highest award for performance in support of the Equal Employment Opportunity Program.

3.   In special recognition of Maltinsky's efforts to improve the FBI, in June 2021, LAFO leadership entrusted to Maltinsky two Pride flags that had flown from the flagpole located in front of the LAFO. Maltinsky displayed one of those flags at his workstation.

4.   In October 2025, Maltinsky was on the verge of achieving his childhood dream of

2

becoming an FBI Special Agent. Having worked for over 16 years as a non-agent employee of the FBI, he applied to and was accepted by the FBI's Special Agent training academy at Quantico, Virginia.

5.      On October 1, 2025, after successfully completing 16 weeks of the FBI Academy's 19-week training program, Maltinsky was handed a letter terminating his employment with the FBI. The letter was signed by Defendant Patel ("Patel"). In the letter, Patel wrote that he had "determined that [Maltinsky] exercised poor judgment with an inappropriate display of political signage in [his] work area during [his] previous assignment at the Los Angeles Field Office."  In short, Patel fired Maltinsky for displaying a Pride flag at his workstation that had been flown *by the FBI* at the LAFO and then given *by the FBI* to Maltinsky.

6.      Defendants discriminated against Maltinsky for engaging in protected speech, for his sexual orientation, and for opposing discrimination—a clear and brazen violation of federal law and the Constitution.

7.      The Plaintiff requests that this Court review and grant relief on the grounds that Defendants' actions violated his First Amendment rights to free association and speech; his Fifth Amendment rights to be afforded equal protection under the law; and his rights against sexual-orientation discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Plaintiff seeks equitable relief in vindication of his constitutional and statutory rights; compensatory damages for violations of his Title VII rights; declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and mandamus relief under 28 U.S.C. § 1361.

## II.      <u>JURISDICTION AND VENUE</u>

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Plaintiff's causes of action arise under the Constitution and laws of the United

States.  The Court has authority to issue declaratory, injunctive, equitable, and monetary relief, including reinstatement of the Plaintiff to his employment with the FBI, pursuant to 42 U.S.C. § 2000e-16, 42 U.S.C. § 1981a, 28 U.S.C. § 2201, and its inherent equitable powers.  The Court has authority to issue mandamus relief pursuant to 28 U.S.C. § 1361.

9.      Venue is appropriate in this judicial district under 28 U.S.C. §§ 1391(b) and (e) and 42 U.S.C. §  2000e-5(f)(3), which applies pursuant to 42 U.S.C. § 2000e-16(d).

### III.    TITLE VII EXHAUSTION OF REMEDIES

10.      Maltinsky has exhausted his administrative remedies with respect to his Title VII claims prior to filing the first amended complaint. Pursuant to U.S. Equal Employment Opportunity Commission regulations, Maltinsky timely initiated an informal complaint of discrimination and retaliation on October 8, 2025 with the Federal Bureau of Investigation, and timely filed a formal complaint before that Agency on October 24, 2025.  On December 12, 2025, Maltinsky was notified that his complaint was referred to the Department of Justice for processing due to a potential conflict of interest.  On April 20, 2026, the Department of Justice dismissed Maltinsky's complaint for failure to state a claim under 29 C.F.R. § 1614.103, alleging the termination was pursuant to "the FBI Director's authority under Article II of the Constitution" and thus beyond the purview of Title VII.  Maltinsky did not seek reconsideration of the decision and thus it became a final administrative decision.  This amended complaint is filed within 90 days of that decision.

### IV.    PARTIES

11.      Maltinsky, a gay man, is a former employee of the FBI. From August 2009 through March 2014, Maltinsky served as an operational support technician assigned to the LAFO. In that capacity, Maltinsky was embedded in a public corruption squad and provided comprehensive administrative, clerical, and technical support to the Supervisory Special Agent and Special Agents on the squad. Maltinsky's duties and responsibilities included preparing and assisting with trial

preparation for sensitive-investigative matters involving local law enforcement and local/state elected officials. As a technician, he had a specialized skill set that required his fluency in a variety of automated information systems for the retrieval of information from FBI, state, and local law enforcement databases, as well as commercial computerized information systems. For his service as an operational support technician, Maltinsky received various On-the-Spot Awards and Time-Off Awards for going above and beyond the standard expectation of performance.[1]

12.     In April 2014, Maltinsky was promoted to staff operations specialist ("SOS") and assigned to the LAFO cyber intelligence squad. Over the years in this capacity, Maltinsky was embedded on both national security cyber squads and criminal cyber squads. Maltinsky was responsible for providing tactical analysis to operational personnel in support of FBI investigations. The FBI cyber program funded and approved Maltinsky to be trained by the SANS Institute[2] and he successfully received cyber security certifications like the Global Information Assurance Certification for Information Security Fundamentals and Security Essentials.   For his service as an SOS, Maltinsky continued to receive various On-the-Spot Awards and Time-Off Awards for going above and beyond the standard expectation of performance.

13.     While an SOS, Maltinsky was part of a group recognized for its response to the 2016 Sony Pictures attack orchestrated by the Democratic People's Republic of Korea. Maltinsky received the National Intelligence Meritorious Unit Citation for the investigation of the North Korean attack on Sony Pictures.

14.     Maltinsky represented the FBI overseas on multiple occasions. In October 2021, Maltinsky traveled to the Federal Republic of Nigeria in support of an FBI initiative combatting

---

[1] "On-the-Spot" and "Time-Off" awards are informal awards, often involving cash or paid leave, given to federal employees from their supervisors as a way to promptly recognize their contributions to the workplace.
[2] The SANS Institute (SysAdmin, Audit, Network, Security) is a cybersecurity organization that provides training, certifications, programs, and resources to cybersecurity practitioners.

cyber-crime. In November 2023, Maltinsky traveled to Scotland, United Kingdom with members of the FBI LAFO in support of an active high-profile investigation into SIM-swapping (a form of fraud perpetrated through a victim's mobile phone) and cryptocurrency theft.

15.     On July 2, 2024, Maltinsky applied to become an FBI Special Agent, and submitted to a background investigation as part of the application process. On April 10, 2025, the FBI Assistant Director for the Human Resources Division offered Maltinsky the position of FBI Special Agent, informing him that his background investigation had been "favorable."  Maltinsky accepted the position, and, in June 2025, reported to the FBI Academy at Quantico to begin the Basic Field Training Course ("BFTC").

16.     Prior to his unlawful termination, Maltinsky successfully completed 16 weeks of the BFTC, fulfilling every required training milestone.

17.     Maltinsky earned his bachelor's degree in political science from California State University Northridge.

18.     Defendant Patel is sued in his official capacity as the Director of the FBI. In that capacity, Patel maintains an office in Washington, D.C.  Patel made the decision to fire Maltinsky and signed the letter terminating his employment.

19.     Defendant FBI is a subordinate component of the DOJ pursuant to 28 C.F.R. § 0.1. The FBI's principal offices are in Washington, D.C.

20.     Defendant Todd Blanche is sued in his official capacity as the Acting Attorney General of the United States.  He is the head of the Department of Justice and maintains an office in Washington, D.C.[3]

21.     Defendant DOJ is headquartered in Washington, D.C. and is an agency of the

---

[3] Since the filing of the original Complaint, Pamela Bondi was removed from her position as Attorney General and is no longer in government service.

United States subject to the jurisdiction of this Court.  DOJ controls its components, including the FBI.

## V.    FACTS

22.    In November 2015, the FBI issued its Diversity and Inclusion ("D&I") Program Policy Directive. The purpose of this directive was to support employees and applicants who had traditionally been underrepresented in the workforce and to foster an inclusive work environment and enhance mission success. Every FBI field office and headquarters division was mandated by FBI Headquarters to have one employee designated as the official D&I Program Coordinator. This designation was considered a collateral duty and not a primary or full-time job function. In response to this policy directive, the FBI's LAFO undertook several initiatives to promote cultural awareness, to build competence within the LAFO, and to engage the greater Los Angeles community.

23.    In 2016, following the Pulse nightclub massacre, Maltinsky determined that, as a gay man, he had a responsibility to help the FBI achieve mission success by participating in and, ultimately, helping to lead its diversity initiatives. He communicated to his relevant leadership at the time that he was interested in becoming involved in the newly-established D&I program.  In 2017, Maltinsky was selected to join one of the FBI's Diversity Advisory Committees ("DAC") as a voluntary collateral duty. The DACs were an internal body that advised FBI leadership on diversity, equity, inclusion, and accessibility policies. Spanning multiple Presidential administrations, the DACs played a critical role in strengthening the competence and readiness of the FBI workforce.

24.    During this same time, Maltinsky joined the FBI's Bureau Equality Committee, which was tasked with bringing issues related to sexual orientation and gender identity to the attention of FBI executive management and to make recommendations on how the FBI could

continue to evolve as a fair and welcoming workplace for all employees. In 2019, Maltinsky was elected by the Bureau Equality Committee membership to serve as chairperson. In this role, Maltinsky led efforts to identify and oppose discrimination on the basis of sexual orientation within the FBI.

25.     Under Maltinsky's leadership, the Bureau Equality Committee canvased its membership to ascertain what, if any, discrimination employees were experiencing or observing in the workplace on the basis of sexual orientation or gender identity.  In June 2019, from the information the BEC gathered, Maltinsky drafted a Climate Review Report that contained narrative examples of discriminatory, derogatory, and offensive actions and comments faced by LGBTQIA+ individuals during their employment with the FBI.  The results showed that the FBI was creating a hostile work environment for LGBTQIA+ employees by contributing to an "overall culture of intolerance and exclusion against FBI LGBT employees."  The report made recommendations for how the FBI should address these ongoing issues of discrimination faced by LBGTQIA+ employees in the workplace.  Maltinsky provided a copy of the report to members of FBI management including Diversity and Inclusion Section Chief Tonya Odom. In November 2019, Maltinsky briefed the report to Executive Assistant Director Andrew Vale, Assistant Director Renae McDermott, Assistant Director Arlene Gaylord, Section Chief Tonya Odom, Associate Deputy Director Paul Abbate, and other FBI Headquarters leadership.  Maltinsky then developed a training course titled "Sexual Orientation and Gender Identity 101" to address the discriminatory and harassing actions raised in the report, including the use of discriminatory and offensive language aimed at LGBTQIA+ employees.

26.     In addition, in his role as chairperson of the Bureau Equality Committee, Maltinsky advised FBI leadership on relevant issues concerning relocation of personnel to Huntsville, Alabama, organized the FBI's attendance and representation at the Out & Equal 2019 Workplace

Summit in Washington, D.C., and served as an advisor to different components throughout the FBI concerning LGBTQIA+ issues. In 2020, thanks in part to Maltinsky's leadership, the Bureau Equality Committee was awarded the Director's Award of Excellence – Outstanding Service for Diversity and Inclusion. Then, in 2022, Maltinsky was honored for his service with the Attorney General's Equal Employment Opportunity award, a prestigious honor recognizing individuals or teams within the DOJ who made outstanding contributions to advancing equal opportunity, diversity, and inclusion. As of February 2020, Maltinsky's tenure and active participation on the Bureau Equality Committee ended.

27.    In June 2021, FBI Headquarters and the Government Services Administration ("GSA") authorized federal buildings across the country to fly a Pride flag beneath the American flag. In response, the LAFO approved plans for the Pride flag to fly from the main flagpole on the grounds of the Wilshire Federal Building in Los Angeles. On June 25, 2021, the LAFO raised in secondary position a 3' x 5' Progress Pride flag on the main flagpole on the grounds of the Wilshire Federal Building.[4] On or about June 28, 2021, the LAFO lowered the Progress Pride flag and raised in secondary position a 5' x 8' traditional rainbow pride flag, which flew through June 30, 2021.

28.    On or about July 1, 2021, GSA collected the two Pride flags and returned them to the FBI. The LAFO Assistant Special Agent in Charge for Mission Services directed Maltinsky to receive and maintain the Pride flags in recognition of his past efforts to support the FBI's diversity initiatives.

---

[4] The Progress Pride flag is a variation of the traditional rainbow-colored flag that, historically, has served as a representative banner of the LGBTQIA+ community. The Progress Pride flag includes additional elements and colors meant to represent the diversity within the LGBTQIA+ community. For example, the Progress Pride flag features a chevron comprised of black, brown, pink, light blue, and white colors, representing people of color and transgender and non-binary people within the LGTBQIA+ community. The chevron itself is intended to represent progress and forward movement.

29.     At some point thereafter, Maltinsky displayed the Progress Pride flag on the wall of his LAFO workstation, along with a small placard (4" x 6") adjacent to the flag that described the flag's history and meaning. The display of the Progress Pride flag was consistent with a practice within the LAFO of FBI personnel displaying certain material at their workstation. Maltinsky displayed the Progress Pride flag as a private citizen, and not pursuant to any official responsibilities at the FBI.

30.     Defendants routinely permit employees to display signage associated with matters of public concern in their personal workspaces.  For example, Defendants permit employees to display signage that alters the traditional colors of the American flag to include a blue line and which is associated with support for law enforcement. Defendants permit employees to display signage like the Gadsden flag, a Revolutionary War era flag that has come to be associated with a right-leaning movement. And Defendants permit employees to display so-called Punisher iconography, a graphic image of a skull that has come to be associated, in part, with anti-government militias.

31.     Defendant Patel himself distributes challenge coins featuring the blue line, the Punisher symbol, and the Gadsden flag.

32.     At some point following January 20, 2025, an FBI employee assigned to LAFO reported an alleged concern to Maltinsky's direct supervisor about the display of the Progress Pride flag at Maltinsky's workstation.

33.     Maltinsky's supervisor advised him that the supervisor had received this concern, but that, in the supervisor's view, the display of the flag was entirely permissible and appropriate.

34.     Out of an abundance of caution, Maltinsky requested that the Chief Division Counsel for the LAFO review whether the display of the Progress Pride flag and placard was permissible. The Chief Division Counsel advised Maltinsky that the display of the flag and placard

10

did not violate any policy, rule, or regulation.

35.    In early June 2025 and in anticipation of his relocation to Quantico, Virginia, Maltinsky cleaned out his workstation, including the removal of the Progress Pride flag and placard.

36.    On June 15, 2025, Maltinsky reported for service as a New Agent Trainee at the FBI Academy in Quantico, Virginia.

37.    Maltinsky was one of 148 NATs in his BFTC class. The BFTC class was divided into three sections, Alpha, Bravo, and Charlie. Maltinsky was assigned to the Bravo section. At the conclusion of the BFTC, the New Agent Trainees become FBI Special Agents.

38.    The BFTC is a 19-week training program wherein trainees are trained and tested on various skills and competencies to include but not limited to: legal authorities, firearms training, physical fitness, defensive tactics, tactical training, interview and interrogation, evidence preservation and collection, vehicle tactics, and intelligence. If a trainee fails two or more tests, they are recommended for dismissal of the BFTC and depending on the factors, dismissal from the FBI. Generally, the two tests that result in trainees being recycled or dismissed are the third and final legal test and the physical fitness test ("PFT"). Trainees are consistently assessed during practical tactical training. If a recurring pattern or problem is identified, a trainee may be subject for removal or dismissal from BFTC.

39.    By October 1, 2025, Maltinsky had successfully completed 16 weeks of the BFTC, to include all legal tests and the PFT, and was on track to graduate with his class on October 24, 2025.

40.    On the evening of October 1, 2025, Maltinsky met with his squad in the business center of a dormitory on the FBI Academy campus. The purpose of the meeting was to prepare for a training exercise scheduled for the following day. During the meeting, an FBI Field Counselor

for the Bravo section contacted Maltinsky to inform him that Supervisory Special Agent April French ("French") wanted to see him. The Field Counselor escorted Maltinsky to the Hall of Honor where French was waiting for them.

41.    French instructed Maltinsky that they were going to the Administration Building where the executive offices are located. Maltinsky asked French what was happening, and she replied, in substance, that she did not know but that the "Front Office" needed to see him.

42.    Maltinsky then walked to the Administration Building and entered the executive office suite where he was directed to a conference room. Moments after Maltinsky entered the conference room, Deputy Assistant Director Alfred Watson ("Watson") and two section chiefs entered the conference room. Watson advised Maltinsky that he had been terminated from the FBI and handed him a letter signed by Patel. The letter provided, in part:

> This document provides official notice that you are being summarily dismissed from your position as a New Agent Trainee at the FBI Academy in Quantico, Virginia, and removed from federal service, under my authority as FBI Director, effective immediately.
>
> After reviewing the facts and circumstances and considering your probationary status, I have determined that you exercised poor judgment with an inappropriate display of political signage in your work area during your previous assignment at the Los Angeles Field Office.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Federal Bureau of Investigation is hereby terminated.

43.    Maltinsky asked Watson if he was aware of the "facts and circumstances" referenced in the letter. Watson claimed that he was not aware and that the letter had been handed to him that day with instructions to deliver it to Maltinsky and execute the termination.

44.    Maltinsky informed Watson that he believed that the purported "political signage" was a reference to the Progress Pride flag.  Maltinsky did not have any other "signage" displayed at his workstation.  Maltinsky then briefly described his FBI career, what compelled him to join the FBI D&I program, and some of his work in support of the FBI's diversity initiatives. Watson

responded that he appreciated Maltinsky's service and indicated that Maltinsky's efforts towards diversity had helped the FBI and its people in ways that Maltinsky would never know.

45.    Watson informed Maltinsky that he was expected to leave the FBI Academy campus that evening. Watson asked where Maltinsky would go. Maltinsky explained that he had a car, but that he had terminated the lease at his residence in Los Angeles and no longer had a primary residence. After consulting with others, Watson advised Maltinsky that he could spend one more night at the FBI Academy so he could have more time to pack and prepare for his departure. Maltinsky declined. Watson and others then left the conference room.

46.    Shortly thereafter, Maltinsky met with French and a human resources official. The human resources official presented Maltinsky with several documents, including a document for him to sign falsely acknowledging that he was resigning his position. Maltinsky declined to sign that document because he did not resign.

47.    After processing the relevant paperwork, Maltinsky returned all government property to French, collected his personal property and packed his bags. Maltinsky exchanged farewells with several of his classmates. French and two Bravo Field Counselors then escorted Maltinsky to the entrance of the FBI Academy where he loaded his car and departed.

48.    Defendants' actions have harmed Maltinsky by infringing upon the exercise of his constitutional and statutory rights, damaging his reputation, depriving him of his status as an FBI employee in good standing, eliminating his primary source of income, and depriving him of health insurance and other government employment benefits.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FIRST AMENDMENT
### (RETALIATION FOR PROTECTED EXPRESSION)
### (Against All Defendants)

49.    The preceding paragraphs are incorporated and realleged as if fully set forth herein.

50.     The First Amendment to the U.S. Constitution guarantees all citizens "the freedom of speech." This critical constitutional provision not only protects verbal utterances but also expressive conduct, such as displaying expressive flags and iconography.

51.     The First Amendment forbids government officials from firing government employees, or otherwise retaliating against them, for engaging in protected expression. But that is precisely what Defendants did: Defendants singled out and fired Maltinsky because Maltinsky displayed a Progress Pride flag at his workstation—which the FBI itself had flown and which he displayed with the permission and approval of his superiors.

52.     The Progress Pride flag signaled Maltinsky's association with and support for LGBTQIA+ equality and belonging, a matter of substantial public concern but one to which Defendants were hostile.

53.     Maltinsky's display of a Progress Pride flag did not violate any FBI rules, policies, or procedures—and instead was *approved* by his leadership. The display was not inherently partisan or disruptive in any way. Nor was Maltinsky's speech made pursuant to his official responsibilities within the FBI, or made to convey a government created message, or made to fulfill a responsibility created by his employment. Instead, Maltinsky displayed a flag provided to him by the FBI *at his own personal workstation*, speaking entirely *as a private individual* and with the permission of his superiors.

54.     As set forth above, the Defendants' actions constitute improper acts of retribution for protected expression, in violation of the First Amendment to the United States Constitution.

**SECOND CAUSE OF ACTION**
**VIOLATION OF FIRST AMENDMENT**
**(VIEWPOINT DISCRIMINATION / EXPRESSIVE ASSOCIATION)**
**(Against All Defendants)**

55.     The preceding paragraphs are incorporated and realleged as if fully set forth herein.

14

56.    The Defendants permitted employees to personalize their workstations—including with flag symbols that expressed views on matters of public concern.

57.    Maltinsky's display of the Progress Pride flag reflected his association with and support for the LGBTQIA+ community.

58.    For the entire time the Progress Pride flag was displayed at Maltinsky's workstation through the present day, the Defendants have permitted employees to engage in other expressive conduct on a wide range of issues, including by displaying controversial symbols such as so-called Punisher iconography.

59.    Defendants' decision to exact retribution against Maltinsky for his display of the Progress Pride flag—and Defendants' decision not to discipline other members of the FBI who decorated their workstations with other flags and emblems—constitutes impermissible viewpoint discrimination and an unlawful infringement on Maltinsky's associative expression.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(EQUAL PROTECTION)**
**(Against All Defendants)**

60.    The preceding paragraphs are incorporated and realleged as if fully set forth herein.

61.    The Fifth Amendment of the Constitution guarantees the right not to be "deprived of life, liberty or property without due process of law."

62.    The Equal Protection Clause of the Fourteenth Amendment, as incorporated against the federal government through the Fifth Amendment, prohibits the federal government from denying equal protection of the law and protects individuals and entities from unjust discrimination by the federal government.

63.    Defendants DOJ and FBI had an established practice of allowing expression, including Progress Pride flags, at employee workstations. Consistent with that practice, Defendants DOJ and FBI expressly and specifically allowed Maltinsky's identity-based display of

15

the Progress Pride flag at his workstation for the entire time period it was displayed.

64.    Maltinsky relied on the FBI's established practice in good faith.

65.    Maltinsky also relied, in good faith, on the express approval of the two superiors who confirmed he could display the flag at his workstation.

66.    Only after Maltinsky voluntarily removed the Progress Pride flag did Defendants abruptly and arbitrarily reverse their longstanding practice and target Maltinsky retroactively for displaying the Progress Pride flag, all in violation of Maltinsky's rights to equal protection of the law.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(EQUAL PROTECTION)**
**(Against All Defendants)**

67.    The preceding paragraphs are incorporated and realleged as if fully set forth herein.

68.    The Equal Protection Clause of the Fourteenth Amendment applies to the Federal government through the Due Process Clause of the Fifth Amendment.  The Equal Protection Clause prohibits discrimination on the basis of sex, including discrimination based on sexual orientation.

69.    Maltinsky is a gay man.

70.    In targeting Maltinsky for displaying a Progress Pride flag, Defendants revealed their intent to single out and target Maltinsky on the basis of his sexuality.

71.    To the extent Defendants now have a policy of banning the display of Pride flags, Defendants have singled out the LGBTQIA+ community, including gay men, for disfavored treatment.

72.    The Defendants lacked any legitimate interest in punishing Maltinsky for his past display of the Progress Pride flag, which the FBI and DOJ had previously approved. In these circumstances, any interest articulated by the Defendants to justify their actions are arbitrary,

16

irrational, or pretextual, and serve only to mask their true, illegitimate motive for singling out Maltinsky, which was to deny him equal protection of the law and discriminate against him because of his sexuality.

**FIFTH CAUSE OF ACTION**
**DISCRIMINATORY REMOVAL IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e** *et seq.*
*(Sexual Orientation Discrimination)*
**(Against All Defendants)**

73.    The preceding paragraphs are incorporated and realleged as if fully set forth herein.

74.    Maltinsky, a gay man is a member of a protected class.

75.    Defendants subjected Maltinsky to an adverse action when they removed him from federal service.

76.    In removing Maltinsky from federal service, Defendants stated that the basis for the removal was that Maltinsky "exercised poor judgment with an inappropriate display of political signage in [his] work area during [his] previous assignment at the Los Angeles Field Office." The only signage displayed in Maltinsky's LAFO office was a Pride flag.

77.    Other employees who were not openly gay and who had signage that could be labelled as "political" were not removed from federal service.

78.    Defendants' purported reasons for Maltinsky's removal are evidence of discriminatory bias based on his sexual orientation. Indeed, in targeting Maltinsky for displaying a Pride flag, Defendants made clear their intent to single out and target Maltinsky based on his sexual orientation. And to the extent Defendants have a general policy of banning the display of Pride flags on pain of removal, Defendants have singled out the LGBTQIA+ community, including gay men, for disfavored treatment.

79.    Defendants' removal of Maltinsky was an act of discrimination based on his sexual orientation.

17

**SIXTH CAUSE OF ACTION**
**RETALIATORY REMOVAL IN VIOLATION OF TITLE VII OF**
**THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.***
**(Against All Defendants)**

80.    The preceding paragraphs are incorporated and realleged as if fully set forth herein.

81.    Maltinsky engaged in protected activity when he opposed discrimination in the workplace, including derogatory and offensive comments that created a hostile work environment for LGBTQIA+ employees.

82.    Defendants subjected Maltinsky to an adverse action when they removed him from federal service.

83.    In removing Maltinsky from federal service, Defendants stated that the basis for the removal was that Maltinsky "exercised poor judgment with an inappropriate display of political signage in [his] work area during [his] previous assignment at the Los Angeles Field Office."

84.    Maltinsky's leadership on DEI issues, including his protected opposition to the use of slurs in the workplace, was recognized when he was gifted the Pride flag that hung in his workspace. The only signage displayed in Maltinsky's LAFO workspace was the Pride flag and a small card explaining the flag's history.

85.    Other employees who had not participated in protected activity and who had signage that could be labelled as "political" were not removed from federal service.

86.    Defendants' purported reasons for Maltinsky's removal are evidence of retaliatory bias. Indeed, in targeting Maltinsky for displaying a Pride flag that the FBI previously gave him for his work opposing discrimination in the workplace, Defendants made clear their intent to single out and target Maltinsky based on his protected opposition.

87.    Defendants' removal of Maltinsky was an act of retaliation for his opposition to discrimination in the workplace.

18

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE APPOINTMENTS CLAUSE,**
**LEGAL NULLITY, AND *ULTRA VIRES* ACTION**
**(Against All Defendants)**

88.    The preceding paragraphs are incorporated and realleged as if fully set forth herein.

89.    DOJ's Final Agency Decision on Plaintiff's Title VII claims took the position that Article II of the U.S. Constitution gave the Executive Branch unfettered authority to remove Plaintiff regardless of whether his removal violated Title VII or any other statute.

90.    That position is flatly incorrect.  In the alternative, if any of the foregoing constitutional or statutory protections do not apply to Maltinsky because Article II grants the Executive Branch the unfettered authority to remove him (it does not), Plaintiff's removal by Patel was a legal nullity.

91.    That is so because, as DOJ itself recognizes, Article II removal authority cannot be delegated to officials beneath Department heads.  *See, e.g.*, Appointment & Removal of Fed. Rsrv. Bank Members of the Fed. Open Mkt. Comm., 43 Op. O.L.C. 263, 281-82 & n.8, 2019 WL 11594453, at *12-13 & n.8 (2019) ("[T]he [Article II] authority to remove inferior officers may not be delegated to an agency official other than the department head, or another official constitutionally competent to appoint that officer in the first place.").

92.    Patel—the Director of the FBI—is not a Department head.  Rather, the Attorney General is the head of the relevant Department here—DOJ.  The Attorney General did not remove Maltinsky.

93.    Thus, if Article II grants the Executive Branch the unfettered authority to remove Maltinsky (it does not), Plaintiff's removal by Patel was inconsistent with the Appointments Clause, a legal nullity, and *ultra vires*.

**EIGHTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 and 2202**
**(Against All Defendants)**

94.     The preceding paragraphs are incorporated and realleged as if fully set forth herein.

95.     Maltinsky is entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Maltinsky and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have authority to remove Maltinsky without affording him all rights and protections set forth by applicable statutes and regulations, the United States Constitution, and the First and Fifth Amendments thereto.

**NINTH CAUSE OF ACTION**
**WRIT OF MANDAMUS**
**(Against All Defendants)**

96.     The preceding paragraphs are incorporated and realleged as if fully set forth herein.

97.     In the alternative, Maltinsky is entitled to a writ of mandamus commanding Defendants to return him to his most recent position and not remove him from federal service without following lawful procedures.  Defendants had a legal duty not to terminate Maltinsky for the reasons outlined in this Complaint, and absent this Court granting relief, there is no other adequate means of redress.

98.     The provisions of 28 U.S.C. § 1361 create jurisdiction in cases seeking a writ of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies.  To the extent relief is unavailable under the Constitution, federal statutes, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

**VII.    JURY DEMAND**

99.     The Plaintiff demands a jury trial on all triable issues.

20

## VIII.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Maltinsky requests that the Court award him the following relief:

(1) A declaration that the Defendants' actions violated Maltinsky's First Amendment rights and an order of appropriate relief;

(2) A declaration that the Defendants' actions violated Maltinsky's Fifth Amendment rights and an order of appropriate relief;

(3) A declaration that the Defendants' actions violated Title VII of the Civil Rights Act of 1964 and an order of appropriate relief;

(4) An order requiring the Defendants to immediately retroactively reinstate Maltinsky and afford him the same protections offered to any other employee under the Fifth Amendment, Title VII, and other laws;

(5) An award of backpay, benefits, compensatory damages, and other monetary and administrative relief as appropriate, including interest;

(6) An award of the costs of this action and reasonable attorneys' fees;

(7) A writ of mandamus; and

(8) Such other relief as the Court may deem just and proper.

/s/ Christopher M. Mattei
Christopher M. Mattei
  *Pro hac vice*
Margaret M. Donovan
  D.D.C. No. CT0026
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
cmattei@koskoff.com
mdonovan@koskoff.com
*Attorneys for Plaintiff David M. Maltinsky*

21

/s/ Kerrie D. Riggs
Kerrie D. Riggs
  D.D.C. No. 995784
Jeremy D. Wright
  (*Pro hac vice forthcoming*)
KATOR, PARKS, WEISER & WRIGHT, P.L.L.C.
1150 Connecticut Ave., N.W., Suite 705
Washington, D.C. 20036
Phone: (202) 898-4800
Fax: (202) 289-1389
kriggs@katorparks.com
jwright@katorparks.com
*Attorneys for Plaintiff David M. Maltinsky*

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
  D.C. Bar No. 1724093
MARY L. DOHRMANN
  D.C. Bar No. 90042577
SYDNEY FOSTER
  D.C. Bar No. 982340
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
(202) 521-8750
nzelinsky@washingtonlitigationgroup.org
mdohrmann@washingtonlitigationgroup.org
sfoster@washingtonlitigationgroup.org
*Attorneys for Plaintiff David M. Maltinsky*

22