**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DAVID M. MALTINSKY<br><br>*Plaintiff*,<br><br>v.<br><br>KASHYAP P. PATEL, in his official capacity as Director, Federal Bureau of Investigation, United States Department of Justice, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-04031-RJL |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

Case 1:25-cv-04031-RJL    Document 16-1    Filed 06/15/26    Page 2 of 24

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................. 2

I.    Factual Allegations ................................................................................ 2

II.   Procedural History ................................................................................ 4

LEGAL STANDARDS ........................................................................................ 5

ARGUMENT........................................................................................................ 6

I.    Plaintiff's Fifth Amendment Claims Should Be Dismissed ................................. 6

II.   Plaintiff's Title VII Claims Should Be Dismissed.................................................. 8

  A.   Plaintiff's Title VII Discrimination Claim Should Be Dismissed ...................... 9

  B.   Plaintiff's Title VII Retaliation Claim Should Be Dismissed........................... 12

III.  Plaintiff's Mandamus Claim Should Be Dismissed................................................ 15

IV.   Plaintiff's Request for Back Pay and Other Monetary Relief Is Barred by
      Sovereign Immunity................................................................................ 16

CONCLUSION..................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011)................................................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 5

*Bilal v. Metro. Police Dep't*, 25-cv-189 (JEB), 2025 WL 1917959 (D.D.C. July 11, 2025) ........................................................................................................... 11

*Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020)....................................... 7, 8, 10

*Bowen v. Massachusetts*, 487 U.S. 879 (1988).................................................................... 18

*Brown v. GSA*, 425 U.S. 820 (1976) .......................................................................... 7, 8

*Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022).................................... 8

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)...................................................... 15

*Consol. Edison Co. v. Ashcroft*, 286 F.3d 600 (D.C. Cir. 2002)....................................... 15

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)........................................................ 6

*Easaw v. Newport*, 253 F.Supp.3d 22 (D.D.C. 2017)......................................................... 9

*Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405 (D.C. Cir. 1985) .................... 7

*FDIC v. Meyer*, 510 U.S. 471 (1994). ............................................................................... 6

*Gillet v. King*, 931 F. Supp. 9 (D.D.C. 1996) ..................................................................... 8

*Harris v. Bessent*, No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025)................. 16

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65 (D.C. Cir. 2015)................................. 14

*Heckler v. Ringer*, 466 U.S. 602 (1984) ............................................................................ 16

*Howard R.L. Cook & Tommy Shaw Found. for Black Empl. Of the Lib. of Cong., Inc. v. Billington*, 737 F.3d 767 (D.C. Cir. 2013)...................................................................... 12

*Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc) ....................................... 17, 18

*In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) ................................................................... 15

*In re Nat'l Nurses United*, 47 F.4th 746 (D.C. Cir. 2022) ................................................ 15

iii

*Jenkins v. Howard Univ.*, 123 F.4th 1343 (D.C. Cir. 2024) ................................................ 6

*Johnson v. Georgetown Univ.*, No. 25-CV-1540 (CRC), 2026 WL 879522 (D.D.C. Mar. 31, 2026) ........................................................................................................... 11, 12

*Joyner v. Morrison & Foerster LLP*, 140 F.4th 523 (D.C. Cir. 2025) ............................. 11

*Kizas v. Webster*, 707 F.2d 524 (D.C. Cir. 1983) ........................................................... 7, 8

*McKoy v. Spencer*, 271 F. Supp. 3d 25 (D.D.C. 2017)....................................................... 19

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ............................................ 8

*Patzy v. Hochberg*, 217 F. Supp. 3d 357 (D.D.C. 2016) ...................................................... 9

*Perry v. Clinton*, 831 F.Supp.2d 1 (D.D.C. 2011) .............................................................. 14

*Peters v. District of Columbia*, 873 F.Supp.2d 158 (D.D.C. 2012).................................... 14

*Richardson v. Wiley*, 569 F.2d 140 (D.C. Cir. 1977)............................................................. 7

*Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006) ........................................................ 13

*Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531 (D.C. Cir. 2024) ........................... 12

*Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002).................................................................. 9

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996).................................................................. 16

*Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005) ............................................................. 6

*Townsend v. United States*, 236 F. Supp. 3d 280 (D.D.C. 2017)....................................... 10

*United States v. Fausto*, 484 U.S. 439 (1988) .................................................................... 18

*United States v. King*, 395 U.S. 1 (1969)............................................................................ 17

*United States v. Mitchell*, 463 U.S. 206 (1983) ................................................................. 17

*United States v. Testan*, 424 U.S. 392 (1976).................................................................... 17

*Weber v. Department of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008)........................ 18

*Wilson v. Cox*, 753 F.3d 244 (D.C. Cir. 2014).................................................................... 10

*Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007)............................................................ 14

**Statutes**

28 U.S.C. § 1361 ................................................................................................ 15

42 U.S.C. § 2000e-16 .......................................................................................... 7

42 U.S.C. § 2000e-2 ......................................................................................... 6, 8

42 U.S.C. § 2000e-3 ............................................................................................ 6

42 U.S.C. § 2000e–3a ........................................................................................ 12

5 U.S.C. § 2108 ................................................................................................. 18

5 U.S.C. § 5596 ................................................................................................. 18

5 U.S.C. § 702 ................................................................................................... 18

5 U.S.C. § 7511 ................................................................................................. 19

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 6, 19

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 5

v

**INTRODUCTION**

Plaintiff David Maltinsky, a former Federal Bureau of Investigation (FBI) employee, alleges that he was removed from federal service in violation of his rights under the First and Fifth Amendments to the Constitution and Title VII of the Civil Rights Act of 1964 (Title VII). His Amended Complaint asserts nine counts. Five of those counts fail to state a claim upon which relief can be granted and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's Counts Three and Four allege violations of the Fifth Amendment, but those claims are displaced by Title VII because they allege employment discrimination based on sexual orientation, an area for which Congress has provided a comprehensive and exclusive remedial scheme. Accordingly, Title VII forecloses any parallel constitutional remedies. Plaintiff's Counts Five and Six allege discriminatory and retaliatory removal in violation of Title VII based on Plaintiff's sexual orientation and alleged participation in equal employment opportunity (EEO) activity, but Plaintiff does not plead sufficient facts to show that he was removed on either of those bases. Plaintiff's Count Nine seeks a writ of mandamus under 28 U.S.C. § 1361 directing Plaintiff's reinstatement, but it too should be dismissed for failure to satisfy the strict requirements for relief under § 1361. Finally, Plaintiff's request for back pay and other monetary relief is barred by sovereign immunity in the absence of a cognizable Title VII claim or any other applicable statutory waiver and should be dismissed on that basis under Federal Rule of Civil Procedure 12(b)(1).

1

**BACKGROUND**

I.      **Factual Allegations**

Plaintiff was employed by the FBI for approximately sixteen years, primarily working in operational support and intelligence positions at the FBI's Los Angeles Field Office (LAFO). Am. Compl. ¶¶ 1, 11–15, ECF No. 15-2. In June 2025, he left his permanent position at the LAFO and began training for the position of Special Agent at the FBI's Basic Field Training Course at Quantico, Virginia. *Id.* ¶ 15.

Plaintiff had completed sixteen of nineteen weeks of training when his probationary employment was terminated in October 2025. *Id.* ¶ 16; *see* ¶ 42. His termination letter, signed by FBI Director Patel, stated in part:

> This document provides official notice that you are being summarily dismissed from your position as a New Agent Trainee at the FBI Academy in Quantico, Virginia, and removed from federal service, under my authority as FBI Director, effective immediately.
>
> After reviewing the facts and circumstances and considering your probationary status, I have determined that you exercised poor judgment with an inappropriate display of political signage in your work area during your previous assignment at the Los Angeles Field Office.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Federal Bureau of Investigation is hereby terminated.

*Id.* ¶ 42.

Plaintiff alleges that the only "political signage" in his former work area at the LAFO was a Pride Flag. *Id.* ¶¶ 43. The 3-foot by 5-foot "Progress Pride" flag was displayed in his workstation from July 2021 to June 2025, along with a small placard that

2

"described the flag's history and meaning."[1] *Id.* ¶¶ 28–35. Plaintiff does not allege that the flag or the placard identified him as a gay man or explained how he came to possess the specific flag on display.

Plaintiff alleges that he came to possess the flag in July 2021, after it was flown outside the LAFO for several days in June, then lowered and "entrusted to" him "in recognition of his past efforts to support the FBI's diversity initiatives." *Id.* ¶¶ 3, 28. Plaintiff alleges that he had previously been involved in the FBI's diversity initiatives for several years, including as a member of the FBI's "Diversity Advisory Committee" beginning in 2017, and as the "Bureau Equality Committee" chairperson from 2019 until February 2020. *Id.* ¶¶ 22–26. While on the Bureau Equality Committee, he allegedly catalogued "narrative examples of discriminatory, derogatory, and offensive actions and comments faced by LGBTQIA+ [employees]," "showed that the FBI was creating a hostile work environment," and "made recommendations for how the FBI should address these ongoing issues" in a June 2019 report, which he briefed to the FBI's then-leadership and developed a training course to address. *Id.* ¶ 25. He alleges that he received the Attorney General's EEO award in 2022 for his past efforts, *id.* ¶ 26, and otherwise does not allege any EEO activity or involvement beyond the year 2022.

Plaintiff alleges that at some point after January 20, 2025, a co-worker at the LAFO reported a concern about the Pride flag display to Plaintiff's direct supervisor. *Id.* ¶ 32. Plaintiff alleges that both his direct supervisor and the Chief Division Counsel for the LAFO continued to allow him to display the flag. *Id.* ¶¶ 33. He also alleges that the

---

[1] The Amended Complaint does not state precisely what the placard said, though it contains a footnote that can be fairly characterized as describing the "history and meaning" of the Progress Pride flag. *See id.* ¶ 27 n.9.

FBI had allowed other employees to display signage associated with political or public concerns, such as the "blue line" law enforcement support flag, the Gadsden flag, and "Punisher iconography." *Id.* ¶ 30. He does not allege that any co-workers or other FBI personnel made hostile or derogatory remarks to him based on his sexual orientation or any prior EEO activity. He also does not allege any specific facts indicating that his identity as a gay man or any prior activity, aside from his display of the Pride flag, were ever brought to the attention of FBI Director Patel or anyone else who may have been involved in the decision to terminate Plaintiff's employment.

## II.      Procedural History

Plaintiff filed the Complaint in this matter on November 19, 2025. ECF No. 1, Compl. The Complaint asserted six causes of action arising from Plaintiff's removal from FBI employment, including two counts under the First Amendment, two counts under the Fifth Amendment, and counts for declaratory and mandamus relief. Compl. ¶¶ 47–75. Defendants filed a partial motion to dismiss on February 19, 2026, seeking dismissal of Plaintiffs' Fifth Amendment and mandamus claims under Fed. R. Civ. P. 12(b)(6), and dismissal of Plaintiff's request for monetary relief, including back pay, under Rule 12(b)(1). ECF No. 12.

Plaintiff also filed an informal complaint of discrimination and retaliation with the FBI on October 8, 2025, and timely filed a formal complaint on October 24, 2025. The complaint was referred to the Department of Justice for processing. On April 20, 2026, the Department of Justice dismissed Plaintiff's complaint for failure to state a claim under 29 C.F.R. § 1614.103. Plaintiff did not seek reconsideration of the decision. Am. Compl. ¶ 10.

4

Plaintiff filed a consent motion to file the Amended Complaint on May 5, 2026, which Defendants did not oppose, ECF No. 15, and which the Court granted and deemed filed on May 14, 2026, ECF No. 16. Counts One and Two of the Amended Complaint assert First Amendment violations based on alleged retaliation against protected expression and viewpoint discrimination. Compl. ¶¶ 49–59. Counts Three and Four assert Fifth Amendment equal protection violations based on alleged sexual orientation discrimination. *Id.* ¶¶ 60–72. Counts Five and Six—new to the pleadings—allege discriminatory and retaliatory removal in violation of Title VII. *Id.* ¶¶ 73–87. Count Seven—also new—asserts that, to the extent Defendants invoke Article II removal authority, the Director's removal of Plaintiff violated the Appointments Clause and was a "legal nullity" and *ultra vires*. *Id.* ¶ 88–93. Count Eight seeks declaratory relief under 28 U.S.C. §§ 2201–02. *Id.* ¶¶ 94–95. Finally, Count Nine seeks a writ of mandamus under 28 U.S.C. § 1361 directing Defendants to set aside Plaintiff's termination and reinstate him. *Id.* ¶¶ 96–98.

Plaintiff demands a jury trial on all triable issues, *id.* ¶ 99, and seeks declaratory, injunctive, and mandamus relief, reinstatement, back pay and benefits, prejudgment interest, attorney's fees, and other relief the Court deems appropriate, *id.* at 21.

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate if, assuming the truth of all well-pled factual allegations, Plaintiffs have failed to state a claim upon which relief can be granted.  To pass muster, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that

"tenders 'naked assertion[s]' devoid of 'further factual enhancement'" warrants dismissal. *Id.* (quoting *Twombly*, 550 U.S. at 557). Although a court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff, it need not accept "legal conclusions" or "mere conclusory statements." *Id.*

Dismissal under Rule 12(b)(1) is appropriate if the party asserting subject matter jurisdiction fails to meet "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

## ARGUMENT

### I.    Plaintiff's Fifth Amendment Claims Should Be Dismissed

Plaintiff's Fifth Amendment claims (Counts Three and Four) should be dismissed because although they are styled as constitutional claims, they are, in substance, claims of employment discrimination based on sexual orientation. Am. Compl. ¶¶ 60–72. Because Congress has provided a comprehensive and exclusive remedial scheme through Title VII of the Civil Rights Act of 1964, those claims must be dismissed.

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2, 2000e-3 (1976). Under Title VII, discrimination "because of . . . sex," *id.* § 2000e-2(a)(1), includes discrimination based on

sexual orientation, *see Bostock v. Clayton County, Georgia*, 590 U.S. 644, 650–52 (2020). Section 717 of Title VII extends the statute's protections to federal employees, including the FBI. 42 U.S.C. § 2000e-16(a). The Supreme Court has held that Title VII constitutes the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. GSA*, 425 U.S. 820, 829 (1976). Accordingly, Title VII "provides the exclusive judicial remedy for claims of discrimination in [covered] federal employment." *Id.* at 835.

The D.C. Circuit has repeatedly applied this rule, holding that covered federal employees may not bypass Title VII by recasting discrimination claims as constitutional violations. *See, e.g.*, *Kizas v. Webster*, 707 F.2d 524, 541–43 (D.C. Cir. 1983) (rejecting Fifth Amendment claims brought by FBI employees because Title VII provides the exclusive remedy); *Richardson v. Wiley*, 569 F.2d 140, 141 (D.C. Cir. 1977) (per curiam) (holding that a federal employee covered by Title VII may not sue under any other federal statute or under the Fifth Amendment). The D.C. Circuit has recognized that allowing federal employees to recast their Title VII claims as constitutional claims would "clearly threaten" the legislative policies underlying Title VII's comprehensive procedural and remedial framework. *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985).

As an FBI employee at the time of his removal, Plaintiff falls within Title VII's coverage, and Counts Three and Four are claims of employment discrimination within Title VII's scope. In Count Three, Plaintiff alleges that Defendants retroactively targeted him for displaying the Progress Pride flag after allegedly allowing similar displays in the past, and in Count Four, he alleges that the reason for this targeting was because he is a

7

gay man. Am. Compl. ¶¶ 60–72. In short, Plaintiff claims that he was targeted and removed from federal employment because of his sexual orientation.

Removal from employment is an adverse action affecting the "terms, conditions, or privileges of employment" within the meaning of Title VII. 42 U.S.C. § 2000e-2(a)(1); *see Chambers v. District of Columbia*, 35 F.4th 870, 874–75 (D.C. Cir. 2022). Moreover, discrimination on the basis of sexual orientation constitutes discrimination "because of … sex" under Title VII. 42 U.S.C. § 2000e-2(a)(1); *see Bostock*, 590 U.S. at 650–52. Plaintiff's allegations—that he is a gay man and that Defendants took adverse action against him because of that status—describe precisely the type of claim Title VII governs.[2] Such claims must be properly exhausted before bringing a lawsuit in federal court or are subject to dismissal. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002); *Gillet v. King*, 931 F. Supp. 9, 12–13 (D.D.C. 1996).

Although Plaintiff seeks to allege violations of "equal protection" under the Fifth Amendment, the precedent is clear that Title VII supplies the exclusive cause of action for these factual allegations and provides the exclusive remedies for claims sounding in employment discrimination. *See Brown*, 425 U.S. at 835; *Kizas*, 707 F.2d at 541–43. Therefore, Counts Three and Four should be dismissed.

## II.     Plaintiff's Title VII Claims Should Be Dismissed

In his Amended Complaint, Plaintiff added two causes of action under Title VII, alleging that he exhausted his administrative remedies after the Department of Justice dismissed his Title VII complaint on April 20, 2026. Am. Compl. ¶ 10. Count Five of the

---

[2] As discussed *infra* Part II.A, Plaintiffs' allegations are nonetheless insufficient to meet the pleading standards for a Title VII discrimination claim based on sexual orientation.

Amended Complaint alleges that Plaintiff was removed from government service because of his sexual orientation. *Id.* ¶¶ 73–79. Count Six alleges that Plaintiff was removed because he had engaged in prior protected activity under Title VII. *Id.* ¶¶ 80–87. Counts Five and Six should be dismissed because Plaintiff does not plead sufficient facts to support either claim.

### A.    Plaintiff's Title VII Discrimination Claim Should Be Dismissed

Plaintiff's Title VII intentional discrimination claim (Count Five) should be dismissed because Plaintiff does not plead sufficient facts to support a plausible inference that he was terminated because of his sexual orientation. Although Plaintiff alleges that Defendants objected to his display of a Pride flag and terminated him on that basis, those allegations do not, without more, plausibly establish that Defendants terminated his employment because he is gay.

To state a discrimination claim under Title VII, a plaintiff must allege that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Easaw v. Newport*, 253 F.Supp.3d 22, 28 (D.D.C. 2017). An employment discrimination plaintiff must "plead sufficient facts to demonstrate plausible relief." *Patzy v. Hochberg*, 217 F. Supp. 3d 357, 361 (D.D.C. 2016) (citation omitted). The Amended Complaint satisfies the first two elements, but it does not plausibly allege that Plaintiff's termination occurred because of his membership in a protected class.

Title VII prohibits adverse action taken "because of" a protected characteristic. As the Supreme Court explained in *Bostock*, an employer acts "because of" a protected characteristic if the employer "intentionally relies in part" on that characteristic when

making the challenged decision, such that changing the employee's protected characteristic while holding all else constant "would have yielded a different choice by the employer." *Bostock*, 590 U.S. at 659–60.

The Amended Complaint does not plausibly allege that standard here. Plaintiff alleges that he displayed a Pride flag and that Defendants terminated him because of that display. Am. Compl. ¶¶ 42–44. Accepting those allegations as true, the Amended Complaint still does not plead facts permitting a reasonable inference that Defendants relied on Plaintiff's sexual orientation in making the termination decision. The Amended Complaint contains no factual allegations that Director Patel or any other decisionmaker expressed hostility toward gay employees, relied on Plaintiff's sexual orientation in making employment decisions, even knew Plaintiff's sexual orientation, or otherwise indicated that Plaintiff's status as a gay man played any role in the challenged action. *Cf. Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) ("A statement that itself shows . . . bias in the employment decision" may constitute direct evidence of discrimination) (citation omitted); *Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017) ("[M[otions to dismiss are regularly denied in this Circuit where the plaintiff alleges that the employer made a blatant discriminatory statement together with a plausible connection between that statement and an adverse employment decision.").

Nor does the Amended Complaint plausibly allege the but-for causation required by *Bostock*. Plaintiff alleges only that Defendants objected to the display of the Pride flag and acted on that basis. Plaintiff does not allege facts supporting the inference that Defendants would have reached a different decision had Plaintiff been heterosexual but engaged in the same conduct. *See Bostock*, 590 U.S. at 659–60.

10

The Amended Complaint likewise fails to support a reasonable inference of discrimination through comparator allegations. To plead a comparator theory, a plaintiff must "demonstrate 'dissimilar treatment of a similarly situated comparator without the protected characteristic.'" *Johnson v. Georgetown Univ.*, No. 25-CV-1540 (CRC), 2026 WL 879522, at *12 (D.D.C. Mar. 31, 2026) (quoting *Bilal v. Metro. Police Dep't*, 25-cv-189 (JEB), 2025 WL 1917959, at *3 (D.D.C. July 11, 2025)). At the pleading stage, "a plaintiff proceeding on only a comparator theory must plead enough facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of" his protected identity. *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529–30 (D.C. Cir. 2025).

Here, Plaintiff identifies no similarly situated heterosexual probationary Special Agent Trainee who engaged in comparable conduct but was retained. Nor does he allege that heterosexual employees who displayed Pride flags received more favorable treatment. The Amended Complaint's references to alleged displays of "blue line" flags, Gadsden flags, and Punisher imagery by unidentified employees do not bridge that gap because Plaintiff pleads no facts showing that the individuals associated with those displays were similarly situated in any relevant respect.

In sum, the Amended Complaint does not plausibly allege that Plaintiff was terminated because of his sexual orientation. Rather, it alleges that Defendants objected to Plaintiff's display of a Pride flag and terminated him on that basis. Those allegations may bear on Plaintiff's First Amendment theory, but they do not plausibly establish that Defendants acted because Plaintiff is gay, which is the relevant inquiry under Title VII. The Amended Complaint contains no factual allegations supporting the inference that

11

Plaintiff's sexual orientation was a but-for cause of the challenged employment action or that Defendants would have reached a different result had Plaintiff been heterosexual but engaged in the same conduct. Accordingly, Count Five should be dismissed.

### B.      Plaintiff's Title VII Retaliation Claim Should Be Dismissed

Plaintiff's Title VII retaliation claim (Count Six) should be dismissed because Plaintiff does not plead sufficient facts to support a plausible inference that Plaintiff was terminated because of prior protected activity under Title VII.

To state a Title VII retaliation claim, "a plaintiff must plausibly allege that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action by her employer, and (3) the two are causally connected." *Johnson*, 2026 WL 879522, at \*19 (quoting *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024)). A plaintiff has engaged in activity that Title VII protects if he has "opposed . . . an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." *Howard R.L. Cook & Tommy Shaw Found. for Black Empl. Of the Lib. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (quoting 42 U.S.C. § 2000e–3a).

Plaintiff alleges that he "engaged in protected activity when he opposed discrimination in the workplace, including derogatory and offensive comments that created a hostile work environment for LGBTQIA+ employees." Am. Compl. ¶¶ 81. According to the Amended Complaint, Plaintiff engaged in such activity while leading the Bureau Equality Committee, when he drafted a June 2019 report that "showed that the FBI was creating a hostile work environment for LGBTQIA+ employees" and made recommendations for the FBI to address those concerns. *Id.* ¶¶ 25–26; *see id.* ¶¶ 81–84. Plaintiff further alleges that he was terminated in October 2025 after displaying a Pride

12

flag in his workspace and contends that his termination constituted retaliation for his prior opposition to discrimination. *Id.* ¶¶ 84–86.

Even assuming Plaintiff's alleged activities constitute protected activity under Title VII, the Amended Complaint fails to plausibly allege the required causal connection between those activities and Plaintiff's termination.

For purposes of establishing a prima facie case of retaliation, the D.C. Circuit has "long held a causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity." *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (alterations in original) (internal quotation marks and citation omitted). Plaintiff's allegations are insufficient under either method.

First, Plaintiff fails to plausibly allege that Director Patel—or any other official involved in the termination decision—was aware of Plaintiff's prior protected activity. Plaintiff alleges that he received the Pride flag at issue because of his "leadership on DEI issues, including his protected opposition to the use of slurs in the workplace." Am. Compl. ¶ 84. He therefore attempts to connect his termination for displaying the flag with his earlier opposition to discrimination. *Id.* ¶ 86. But the Amended Complaint does not allege that Director Patel knew why Plaintiff possessed the flag, knew of Plaintiff's prior work with the Bureau Equality Committee, or was otherwise aware of Plaintiff's alleged protected opposition to discrimination.

Nor does Plaintiff allege facts suggesting that the circumstances surrounding his receipt of the flag were apparent from the display itself. Indeed, Plaintiff does not allege that the placard he displayed adjacent to the flag explained that the flag had been

13

presented in recognition for his prior advocacy regarding workplace discrimination. *See id.* ¶¶ 27 n.4, 29, 84–86. Absent factual allegations that the decisionmaker was aware of Plaintiff's prior protected activity, the Amended Complaint does not support an inference that Plaintiff's termination was motivated by retaliatory animus arising from that activity.

The pleading is particularly deficient because Plaintiff does not allege that he engaged in any protected EEO activity during Director Patel's tenure as FBI Director or otherwise explain how his alleged activities up to the year 2022 would have come to Director Patel's attention. *See Peters v. District of Columbia*, 873 F.Supp.2d 158, 203–04 (D.D.C. 2012) (finding the alleged causal link "too tenuous" where the plaintiff failed to connect the relevant decisionmaker to the protected activity); *Perry v. Clinton*, 831 F.Supp.2d 1, 24 (D.D.C. 2011) (finding no causal connection where the plaintiff failed to explain why the relevant supervisor would retaliate based on a complaint involving someone else).

Second, Plaintiff fails to plausibly allege causation through temporal proximity. As Plaintiff alleges, his involvement in the activities underlying his retaliation claim occurred between 2016 and 2022, and primarily occurred from 2019–2020 during his "tenure and active participation on" the Bureau Equality Committee. Am. Compl. ¶¶ 23–26, 81–84. He was terminated in October 2025. *Id.* ¶ 5. These allegations are too far apart in time to support an inference of causation.

The D.C. Circuit has held that "[t]emporal proximity can indeed support an inference of causation, but only where the two events are very close in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citation and internal quotation marks omitted); *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015)

14

("[U]nder some circumstances, temporal proximity between an employer's knowledge of protected activity and an adverse personnel action may alone be sufficient to raise an inference of causation"). The Supreme Court has observed that even a three-month gap may be too lengthy, standing alone, to support an inference of causation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing approvingly cases finding three- and four-month intervals insufficient to establish a prima facie case, and holding that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all").

Here, Plaintiff alleges a gap of at least three years between his alleged protected activity and the challenged termination decision. Such a span is far too attenuated to support a plausible inference that Plaintiff's termination was caused by his prior opposition to discrimination or the use of slurs in the workplace. Accordingly, because the Amended Complaint does not plausibly allege either decisionmaker knowledge or temporal proximity sufficient to support causation, Count Six should be dismissed.

### III.    Plaintiff's Mandamus Claim Should Be Dismissed

The Court should dismiss Count Nine, which seeks a writ of mandamus under 28 U.S.C. § 1361 compelling Defendants to set aside his termination and reinstate him. Am. Compl. ¶¶ 96–98. Mandamus is a "drastic" and "extraordinary" remedy, reserved for exceptional circumstances. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). To obtain mandamus relief, a plaintiff must demonstrate: (1) a clear and indisputable right to relief; (2) a clear, nondiscretionary duty on the part of the defendant; and (3) the absence of any other adequate remedy. *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002).

15

Plaintiff fails every step of this analysis. To start, Plaintiff has not identified any such ministerial duty. The selection, training, and retention of potential FBI agents is not a mere ministerial task. *See* Am. Compl. ¶ 15. Nor has Plaintiff established a clear right to such relief. To the contrary, the D.C. Circuit has recognized that the availability of such relief poses "complicated and exceptionally difficult questions regarding the constitutional relationship between the judiciary and the executive branch." *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996); *see also id.* at 978 (explaining the D.C. Circuit has "never attempted to exercise power to order the President to perform a ministerial duty"); *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *6 n.4 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting) ("*Swan* says nothing about when it would be appropriate to impose mandamus."). Likewise, Plaintiff has not established that Defendants owe him a "clear nondiscretionary duty," *Heckler v. Ringer*, 466 U.S. 602, 616 (1984), or that some other form of remedy is not adequate or appropriate in this case. Accordingly, the Court should dismiss Plaintiff's Sixth Cause of Action.

## IV. Plaintiff's Request for Back Pay and Other Monetary Relief Is Barred by Sovereign Immunity

Congress has authorized back pay as a cognizable remedy under Title VII, *see* 42 U.S.C. § 2000e-5(g), but Plaintiff has failed to adequately plead a Title VII discrimination or retaliation claim. To the extent constitutional claims remain in this case, Plaintiff's demand for monetary relief, including "back pay," "other monetary" relief, and "prejudgment interest" must be dismissed independently under Fed. R. Civ. P. 12(b)(1) because the United States has not waived sovereign immunity for such remedies.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*,

16

463 U.S. 206, 212 (1983). Such consent must be "unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969).

The D.C. Circuit has squarely held that federal employees may not recover back pay on constitutional claims absent a statutory waiver. In *Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (en banc), the court held that back pay is unavailable for constitutional claims "because Congress has not expressed an unequivocal intent to waive sovereign immunity for such relief." *Id.* at 532. There, the plaintiff alleged that he was not selected for a government job in retaliation for protected speech under the First Amendment and sought relief to include "instatement" and back pay. *Id.* The court held that instatement constitutes specific equitable relief, but that back pay or any other monetary relief to redress a loss of income flowing from the alleged constitutional violation constitutes compensatory relief, *i.e.*, "money damages". *Id.* at 533–34; *see also United States v. Testan*, 424 U.S. 392, 404 (1976) (describing a claim for back pay as one for "money damages"). Because no statute waived sovereign immunity for such monetary relief for the plaintiff's constitutional claims, the court held that the request for back pay was barred. *Hubbard*, 982 F.2d at 534.

Plaintiff's request for relief in this case is materially indistinguishable from that in *Hubbard*. Plaintiff seeks reinstatement plus "backpay, benefits, and other monetary and administrative relief, plus prejudgment interest." Am. Compl. at 21. Under *Hubbard*, this Court must construe Plaintiff's request for reinstatement as specific relief and his request for backpay and other monetary relief as money damages. As explained below, because there is no statutory waiver of sovereign immunity for money damages applicable here, back pay and other monetary relief is barred.

17

The Administrative Procedure Act (APA) does not supply a waiver of sovereign immunity for back pay in this case. The APA waives sovereign immunity in suits challenging agency action for "relief other than money damages." 5 U.S.C. § 702. In *Hubbard*, the D.C. Circuit rejected the argument that back pay fell within the scope of equitable relief that the Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 879 (1988) distinguished from "money damages" in the APA context. *See Hubbard*, 982 F.2d at 536–37. Thus, it is well settled that the APA does not provide a waiver of sovereign immunity for a back pay award in this case.

Further, Plaintiff cannot invoke the Back Pay Act, 5 U.S.C. § 5596, to establish a waiver of sovereign immunity. The Back Pay Act provides relief only when an employee "on the basis of a timely appeal or an administrative determination," is found by an "appropriate authority" under applicable law to have been subjected to an unjustified personnel action. 5 U.S.C. § 5596(b)(1). And in *United States v. Fausto*, 484 U.S. 439 (1988), the Supreme Court held that the Back Pay Act does not independently create a waiver of sovereign immunity for employees whom Congress excluded from the Civil Service Reform Act's (CSRA) remedial framework. *Id.* at 454. An "appropriate authority" under the Back Pay Act refers to a body authorized by the CSRA to review personnel actions—such as the agency, the Merit Systems Protection Board, or the Federal Circuit—not a district court adjudicating constitutional claims. *Id.*; *accord Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008) ("[T]he district court, like the Claims Court in *Fausto*, was not an 'appropriate authority' when it made its determination."). Moreover, as an FBI employee who does not otherwise allege "preference-eligible" status under the CSRA, *see* 5 U.S.C. § 2108(3), Plaintiff is

18

excluded from the CSRA's remedial scheme, *id.* § 7511(b)(8). Thus, there has not been (and cannot be) a determination by an "appropriate authority" within the scope of the Back Pay Act to create a waiver of sovereign immunity here.

Under Rule 12(b)(1), it is proper for this Court to dismiss Plaintiff's requests for monetary relief where such relief is barred by sovereign immunity. *See, e.g.*, *McKoy v. Spencer*, 271 F. Supp. 3d 25, 34 (D.D.C. 2017) (allowing APA claims to proceed but ruling that "[t]o the extent Plaintiff requests money damages under those claims, those requests are dismissed"). Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's request for back pay and any other monetary relief, as such relief is barred as a matter of law.

## CONCLUSION

For these reasons, the Court should grant Defendants' partial motion to dismiss.

Dated: June 15, 2026                     Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         CHRISTOPHER R. HALL
                                         Assistant Branch Director

                                         /s/ *Natalie M. Villalon*
                                         NATALIE M. VILLALON
                                         DC Bar No. 90015127
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, DC 20005
                                         Tel: (202) 860-9963
                                         Email: Natalie.M.Villalon@usdoj.gov

                                         *Counsel for Defendants*

19