**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAVID MALTINSKY,

*Plaintiff*,

v.

KASHYAP P. PATEL *et al.*,

*Defendants*.

No. 25-cv-4031-RJL

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................. 6

    I.    PLAINTIFF ADEQUATELY PLEADED TITLE VII DISCRIMINATION
        AND RETALIATION CLAIMS. ................................................................. 8

        A.    Applicable Law ............................................................................................ 8

        B.    Plaintiff adequately alleged a Title VII discrimination claim....................... 13

        C.    Plaintiff adequately alleged a Title VII retaliation claim.............................. 19

    II.    PLAINTIFF PROPERLY PLEADED FIFTH AMENDMENT CLAIMS...................... 23

    III.    PLAINTIFF ADEQUATELY PLEADED A MANDAMUS CLAIM............................ 24

    IV.    THE FEDERAL GOVERNMENT HAS WAIVED ITS SOVEREIGN
        IMMUNITY FOR BACK PAY AND OTHER MONETARY RELIEF.......................... 26

CONCLUSION.............................................................................................................. 27

**TABLE OF AUTHORITIES**

**Cases**

*Abigail All. for Better Access to Dev. Drugs v. von Eschenbach,*
495 F.3d 695 (D.C. Cir. 2007) ................................................................................... 17

*Allen v. Johnson,*
795 F.3d 34 (D.C. Cir. 2015) ............................................................................... 20, 22

*Am. Hosp. Ass'n v. Burwell,*
812 F.3d 183 (D.C. Cir. 2016) ................................................................................... 26

*Ames v. Ohio Dep't of Youth Servs.,*
605 U.S. 303 (2025) ................................................................................................... 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 6

*Babb v. Sec'y, Dep't of Veterans Affs.,*
992 F.3d 1193 (11th Cir. 2021) ..................................................................... 10, 12, 13

*Babb v. Wilkie,*
589 U.S. 399 (2020) .......................................................................................... 9, 10, 12

*Bahlul v. United States,*
77 F.4th 918 (D.C. Cir. 2023) .................................................................................... 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................... 5, 6, 19

*Bolling v. Sharpe,*
347 U.S. 497 (1954) ................................................................................................... 23

*Bostock v. Clayton Cnty.,*
590 U.S. 644 (2020) ..................................................................................................... 9

*Bowe-Connor v. Shinseki,*
845 F. Supp. 2d 77 (D.D.C. 2012) ............................................................................. 14

*Brady v. Office of Sergeant at Arms,*
520 F.3d 490 (D.C. Cir 2008) .............................................................................. 11, 14

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993) ................................................................................................... 16

*Brown v. GSA,*
425 U.S. 820 (1976) ................................................................................................... 23

*Brown v. Sec'y of the Army,*
918 F.2d 214 (D.C. Cir. 1990) ................................................................................... 27

*Browning v. Clinton,*
292 F.3d 235 (D.C. Cir. 2002) ..................................................................................... 5

*Citizens for Resp. & Ethics in Wash. v. Exec. Off. of the President*,
   587 F. Supp. 2d 48 (D.D.C. 2008)..................................................................... 25

*Daniels v. City of Arlington*,
   246 F.3d 500 (5th Cir. 2001) ........................................................................... 14

*Douglas v. Donovan*,
   559 F.3d 549 (D.C. Cir. 2009).......................................................................... 20

*Ethnic Emps. of Libr. of Cong. v. Boorstin*,
   751 F.2d 1405 (D.C. Cir. 1985)................................................................... 23, 24

*Ford v. Mabus*,
   629 F.3d 198 (D.C. Cir. 2010)........................................................................... 10

*Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.*,
   697 F. Supp. 3d 112 (S.D.N.Y. 2023) ............................................................... 17

*George v. Leavitt*,
   407 F.3d 405 (D.C. Cir. 2005)...................................................................... 10, 15

*Gomez-Perez v. Potter*,
   553 U.S. 474 (2008)........................................................................................... 11

*Gulf Coast Mar. Supply, Inc. v. United States*,
   867 F.3d 123 (D.C. Cir. 2017)............................................................................. 6

*Harris v. D.C. Water & Sewer Auth.*,
   791 F.3d 65 (D.C. Cir. 2015).............................................................................. 21

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012).............................................................................. 6

*Ho v. Garland*,
   106 F.4th 47 (D.C. Cir. 2024)............................................................................. 12

*Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps.*
*of Libr. of Cong., Inc. v. Billington*,
   737 F.3d 767 (D.C. Cir. 2013)............................................................................ 12

*Huff v. Buttigieg*,
   42 F.4th 638 (7th Cir. 2022) ........................................................................ 12, 13

*Jones v. Bernanke*,
   557 F.3d 670 (D.C. Cir. 2009)............................................................................ 21

*Joyner v. Morrison & Foerster LLP*,
   140 F.4th 523 (D.C. Cir. 2025)..................................................................... 18, 19

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
   219 F. Supp. 2d 20 (D.D.C. 2002)...................................................................... 25

*Kirwa v. Dep't. of Def.*,
   285 F. Supp. 3d 257 (D.D.C. 2018).................................................................... 25

*Kizas v. Webster*,
   707 F.2d 524 (D.C. Cir. 1983)..................................................................... 23, 24

*Larae S. v. McDonough*,
No. 2022004338, 2024 WL 1701266 (EEOC Apr. 8, 2024) ...................................................... 17

*Lewis v. U.S. Parole Comm'n*,
743 F. Supp. 3d 181 (2024) ........................................................................................................ 25

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ................................................................................................................... 10

*McNair v. District of Columbia*,
213 F. Supp. 3d 81 (D.D.C. 2016) ................................................................................... 6, 18, 19

*Media Matters for Am. v. FTC*,
805 F. Supp. 3d 105 (D.D.C. 2025) ........................................................................................... 22

*Nanko Shipping, USA v. Alcoa, Inc.*,
850 F.3d 461 (D.C. Cir. 2017) ................................................................................................... 11

*Nurriddin v. Bolden*,
818 F.3d 751 (D.C. Cir. 2016) ................................................................................................... 13

*Ponce v. Billington*,
679 F.3d 840 (D.C. Cir. 2012) ................................................................................................ 9, 13

*Ramos v. Garland*,
77 F.4th 932 (D.C. Cir. 2023) .................................................................................................... 11

*Ray v. Henderson*,
217 F.3d 1234 (9th Cir. 2000) .................................................................................................... 20

*Rhone v. Rubio*,
No. 24-cv-3389 (RC), 2025 WL 3017791 (D.D.C. Oct. 28, 2025) ........................................... 18

*Rochon v. Gonzales*,
438 F.3d 1211 (D.C. Cir. 2006) ................................................................................................. 26

*Save Jobs USA v. U.S. DHS*,
111 F.4th 76 (D.C. Cir. 2024) .................................................................................................... 13

*Singletary v. District of Columbia*,
351 F.3d 519 (D.C. Cir. 2003) ..................................................................................................... 9

*Swierkiewicz v. Sorema N. A.*,
534 U.S. 506 (2002) ................................................................................................................... 11

*Templeton v. First Tenn Bank*,
424 F. App'x 249 (4th Cir. 2011) ............................................................................................... 22

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ................................................................................................................... 12

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ................................................................................................................... 14

*Wang v. Wash. Metro. Area Transit Auth.*,
206 F. Supp. 3d 46 (D.D.C. 2016) ............................................................................................. 22

iv

*West v. Gibson*,
  527 U.S. 212 (1999) ......................................................................................................... 26

*Williams v. District of Columbia*,
  317 F. Supp. 3d 195 (D.D.C. 2018) ................................................................................. 17

*Winston v. Clough*,
  712 F. Supp. 2d 1 (D.D.C. 2010) ..................................................................................... 11

*Young v. Dillon Cos.*,
  468 F.3d 1243 (10th Cir. 2006) ....................................................................................... 15

**Statutes**

5 U.S.C. § 5996(b)(1) ............................................................................................................ 27
5 U.S.C. § 5996(b)(2) ............................................................................................................ 27
29 U.S.C. § 633a(a) ................................................................................................................. 9
42 U.S.C. § 1981a(a)(1) ........................................................................................................ 26
42 U.S.C. § 2000e-16(a) ................................................................................................... 8, 10
42 U.S.C. § 2000e-16(d) ....................................................................................................... 26
42 U.S.C. § 2000e-2(a)(1) ...................................................................................................... 9
42 U.S.C. § 2000e-2(m) .......................................................................................................... 9
42 U.S.C. § 2000e-3(a) .................................................................................................... 11, 12
42 U.S.C. § 2000e-5(g) ......................................................................................................... 26

**Rules & Constitutional Provisions**

5 C.F.R. § 550.803 ................................................................................................................ 27
U.S. Const. amend. V............................................................................................................. 23

**Miscellaneous Government Documents**

Equal Employment Opportunity Commission, *EEOC Enforcement Guidance
  On Retaliation and Related Issues*, 2016 WL 4688886 (2016) ................................................. 12

*Twomey v. Department of Justice*, Agency Closing Brief
  No. DC-0752-25-1950-I-1 (M.S.P.B. July 15, 2025) ................................................................. 25

v

**INTRODUCTION**

This case is egregious.  Plaintiff David Maltinsky served this Nation as an exemplary employee of the Federal Bureau of Investigation ("FBI" or "Bureau") for more than a decade. Maltinsky also happens to be gay.  After the tragic attack on a gay nightclub in 2016, Maltinsky volunteered to assist with the FBI's efforts to combat discrimination against the Bureau's LGBTQIA+ employees.  In recognition of his service, the FBI entrusted to him two pride flags that the Bureau had flown outside the Los Angeles Field Office, where Maltinsky worked.  But in Fall 2025, Defendants fired him for displaying one of those flags at his workstation—despite his supervisor having expressly approved the display—targeting Maltinsky for his speech, his sexual orientation, and his prior protected efforts to combat discrimination.

Maltinsky's termination presents textbook violations of the First Amendment and Title VII of the Civil Rights Act of 1964.  It sent shockwaves through the rank and file at the FBI.  At this stage in the proceedings, Defendants do not contest that Maltinsky adequately pleaded First Amendment and Appointments Clause claims—meaning this case must proceed to discovery. Instead, Defendants have filed a Partial Motion to Dismiss, ECF Nos. 16 & 16-1 (the "Motion"), focused on Maltinsky's Title VII claims and a handful of minor issues in this case.

The Motion is meritless.  The First Amended Complaint plausibly alleges that Defendants fired Maltinsky because of his sexual orientation in violation of Title VII.  Defendants now say that terminating Maltinsky for displaying the pride flag does not give rise to an inference of discrimination on the basis of his sexual orientation.  This argument is as breathtaking as it is baseless.  When an employer fires a Jew for wearing a Star of David necklace, or a person of French origin for displaying the tricolor flag, the act betrays hostility toward the employee's protected characteristic.  So too, when Defendants targeted Maltinsky for displaying a pride flag—

1

despite having gifted him the flag, having sanctioned its display, and also refraining from disciplining anyone else for displaying far more controversial signage—they betrayed their discriminatory intent. The First Amended Complaint similarly plausibly alleges that Defendants fired Maltinsky in retaliation for his prior protected activity opposing discrimination against LGBTQIA+ employees. The inference of unlawful retaliation is profound. The FBI had gifted Maltinsky the pride flag *in recognition of his prior protected activity*. Defendants freely admitted—in writing—that they fired Maltinsky because he displayed that flag. That is more than enough to make it plausible that Defendants fired Maltinsky because of the protected activity the flag commemorated, and of which they disapprove.

Defendants' remaining objections are picayune. The First Amended Complaint includes two Fifth Amendment claims in the alternative. Here's why: Title VII normally displaces a Fifth Amendment claim based on equal-protection principles. But Defendants have argued (including in the administrative proceedings in this case) that Article II invalidates Title VII's protections for the federal workforce. If Defendants are correct about Title VII's invalidity (to be clear: they are not), the Fifth Amendment would then provide an independent check on the government. Defendants' motion to dismiss declines to make the Article II argument about Title VII. But until Defendants disclaim their sweeping Article II theory, the Court should retain the Fifth Amendment claims in the case as a backstop. Otherwise, Defendants could dismiss the Fifth Amendment claims now because Title VII provides relief, reassert their Article II arguments later to invalidate Title VII, and leave Maltinsky without any avenue for relief at the end of the case. The First Amended Complaint also contains an alternative mandamus claim, and it is common for courts in this District to maintain the alternative request for such relief at this early stage. Finally, the First

2

Amended Complaint appropriately requested back pay and other monetary relief, which Title VII unquestionably authorizes district courts to award.

Defendants' shocking abuse of an honorable member of the federal law enforcement community cries out for justice. The government's Motion is an exercise in delay. Even if Defendants prevail on every aspect, the First Amendment claims and Appointments Clause claim will remain live, and the parties will need to plumb the facts regarding Defendants' egregious actions. For that reason, Plaintiff is concurrently filing a motion to schedule a Rule 16 conference. The Court should deny Defendants' motion to dismiss.

## BACKGROUND

Until his abrupt and unlawful firing, David Maltinsky served the FBI with distinction for more than 16 years. First Amended Compl. ("FAC") ¶¶ 1-4, ECF No. 15-2. He began working at the Bureau in 2009 as an operational support technician in the Los Angeles Field Office ("LAFO"). *Id.* ¶ 1. Five years later, the Bureau promoted him to a staff operations specialist, a position in which he played a critical role in combating public corruption and international cybercrime. *Id.*

In 2016, a terrorist radicalized by ISIS killed 49 people and wounded dozens more at a gay nightclub called Pulse. Maltinsky was horrified by the terrorist attack. In response, he resolved to support the FBI's then-existing diversity initiatives, which he hoped would strengthen the FBI's capacity to prevent and respond to similar terrorist attacks in the future. *Id.* ¶¶ 2, 23.

Maltinsky helped lead those initiatives and ultimately served as Chairperson of the FBI's Bureau Equality Committee. *Id.* ¶ 24. In that role, he led efforts to combat employment discrimination within the FBI based on sexual orientation and gender identity. *Id.* ¶¶ 22-26. In 2022, the Department of Justice honored Maltinsky for his efforts by presenting him with the Attorney General's Equal Employment Opportunity Award. *Id.* ¶ 26. In further recognition of his

3

efforts to support the FBI's diversity initiatives, the LAFO entrusted two pride flags, flown outside the office in 2021, to Maltinsky's care. Maltinsky proceeded to display one of those flags at his workstation with a placard explaining its history and meaning, consistent with FBI personnel guidelines. *Id.* ¶¶ 27-29.

In January 2025, someone complained to Maltinsky's supervisor about the pride flag displayed at his workstation. The supervisor expressly told Maltinsky that "the display of the flag was entirely permissible and appropriate." *Id.* ¶ 32-33. Out of an abundance of caution, Maltinsky sought the advice of the field office's Chief Division Counsel, who informed him that the flag and the small placard "did not violate any policy, rule, or regulation." *Id.* ¶ 34.

In June 2025, Maltinsky began training at Quantico to become a Special Agent. *Id.* ¶ 36. This reflected the culmination of Maltinsky's lifelong dream. In October, with just three weeks of training remaining, Maltinsky was called into a meeting with Supervisory Special Agent April French, Deputy Assistant Director Alfred Watson, and two section chiefs. *Id.* ¶¶ 39-42. Watson informed Maltinsky that he had been terminated and provided him with a letter, signed by Defendant Kashyap Patel, removing him from the federal service.

According to Defendant Patel's letter:

After reviewing the facts and circumstances and considering your probationary status, I have determined that you exercised poor judgment with an inappropriate display of political signage in your work area during your previous assignment at the Los Angeles Field Office.

*Id.* ¶ 42. In short: the Director of the FBI targeted and fired Maltinsky for displaying a pride flag that the FBI had gifted to him in recognition of his efforts to combat discrimination, that his supervisor expressly approved, and that the Chief Division Counsel confirmed was completely permissible.

Maltinsky filed a timely Title VII complaint alleging both discrimination and retaliation

4

with the FBI's Equal Employment Opportunity office.  The Department of Justice dismissed the complaint for failure to state a claim under 29 C.F.R. § 1614.103, claiming Maltinsky's termination was pursuant to "the FBI Director's authority under Article II of the Constitution" and thus beyond the purview of Title VII.  *Id.* ¶ 10.

Maltinsky also brought this lawsuit.  The First Amended Complaint asserts nine causes of action: two causes of action under the First Amendment for unlawful retaliation and viewpoint discrimination; two causes of actions under the Fifth Amendment for violations of Maltinsky's equal-protection rights; two causes of action under Title VII of the Civil Rights Act for discriminatory removal and retaliation; a cause of action for violation of the Appointments Clause; a claim for declaratory relief; and an alternative claim for a writ of mandamus, to the extent mandamus is the appropriate remedy in this case.  FAC ¶¶ 49-98.

On April 15, 2026, Defendants filed a partial motion to dismiss.  Defendants do not challenge whether Maltinsky has pleaded adequate claims under the First Amendment or the Appointments Clause.  Instead, Defendants seek to dismiss only Maltinsky's Fifth Amendment and Title VII claims, his request for back pay and other monetary relief, and his alternative mandamus claim.

**LEGAL STANDARD**

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).  When deciding a Rule 12(b)(6) motion, the court must treat the complaint's "[f]actual allegations" as "true," and it must "construe the complaint in favor of

5

the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).

A complaint's factual allegations, taken as true and construed in favor of the plaintiff, need only raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct. *Id*. at 556. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id*. A claim is "plausible on its face" when the facts pled in the complaint allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). In evaluating "employment discrimination" claims in particular, "Courts in this Circuit have consistently recognized the ease with which a plaintiff . . . can survive a motion to dismiss." *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citation modified).

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) if the court "lack[s] . . . subject-matter jurisdiction." Courts adjudicating motions to dismiss for lack of subject-matter jurisdiction generally accept "well-pled factual allegations" while "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (per curiam).

## ARGUMENT

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation modified). Defendants do not dispute that Maltinsky has met that burden, in spades, with respect to his First

Amendment claims and his Appointments Clause claim.  The core of this case—which concerns the government's effort to target an honorable member of the FBI for nakedly improper reasons—must now proceed to discovery.

The arguments Defendants raise are meritless.  *First*, Maltinsky adequately pleaded a Title VII discrimination claim and a Title VII retaliation claim.  Defendants expressly stated that they fired Maltinsky for displaying a pride flag.  It hardly takes an inferential leap to conclude that Defendants fired Maltinsky because of his sexual orientation (which the flag symbolizes) and in retaliation for his prior protected activity (which that specific flag honored).

*Second*, in an abundance of caution, the First Amended Complaint contains two equal-protection claims under the Fifth Amendment.  In the administrative proceedings, the Department of Justice dismissed Maltinsky's Title VII claims on the theory that Title VII conflicts with Article II and cannot constitutionally apply to Maltinsky's firing.  The Fifth Amendment claims provide a constitutional backup in response to the government's argument.  Unless the government agrees that it will not challenge the applicability of Title VII in this case, it would be premature to dismiss the Fifth Amendment claims.  Otherwise, the government could prompt the dismissal of the Fifth Amendment claims now, attack Title VII later, and leave Maltinsky with no avenue for relief.  If the government waives its Article II argument, however, Maltinsky has no objection to dismissing the Fifth Amendment claims.

*Third*, the First Amended Complaint properly contains a mandamus claim, in the alternative, should one be necessary.  Courts in this District frequently retain this kind of mandamus claim at this early stage in the proceedings.  *Fourth* and finally, the First Amended

7

Complaint appropriately requests back pay and other monetary relief, given that Title VII indisputably waives the federal government's sovereign immunity for such relief.

## I.  PLAINTIFF ADEQUATELY PLEADED TITLE VII DISCRIMINATION AND RETALIATION CLAIMS.

The First Amended Complaint plausibly alleges two distinct Title VII violations: (i) Maltinsky was terminated because of his sexual orientation; and (ii) Maltinsky was terminated because of his participation in protected activity, namely opposing discrimination in the workplace. The facts are straightforward.  Defendants stated in writing that they fired Maltinsky for displaying a pride flag, which the FBI had gifted to him in recognition of his protected activity.  Both Maltinsky's supervisor and the field office's Chief Division Counsel expressly approved his displaying the flag in his office.  But without any warning, Defendants abruptly reversed course and fired him.  This about-face occurred months after Maltinsky had packed up his office to participate in the FBI's 19-week training program to become a Special Agent.  Although Maltinsky's termination letter claimed that the pride flag amounted to an "inappropriate display of political signage," FAC ¶ 42, Defendants freely permit employees to display other signage unrelated to sexual orientation—including controversial and politically charged Punisher iconography and thin-blue line flags.  This is strong evidence—and certainly passes the minimal standards needed at the pleading stage—that Defendants targeted Maltinsky on account of his sexual orientation (which is intrinsically linked to the pride flag) and due to his prior protected activity (which this specific flag commemorated).  Counts Five and Six should not be dismissed.

### A.  Applicable Law

***Discrimination claim.***  The federal-sector provision of Title VII provides that the "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a).  Title VII likewise prohibits employers

in the private sector from taking various employment actions against an employee "because of such individual's . . . sex," *id.* § 2000e-2(a)(1), or when "sex" was "a motivating factor" for the action, "even though other factors also motivated [it]," *id.* § 2000e-2(m).  As a general rule, "Title VII places the same restrictions on federal . . . agencies as it does on private employers," and courts construe the two provisions to impose the same requirements.  *Singletary v. District of Columbia*, 351 F.3d 519, 524 (D.C. Cir. 2003) (citation modified).  And, as Defendants acknowledge (at 6-7), Title VII's prohibition on "sex" discrimination unquestionably encompasses discrimination based on sexual orientation in the federal and private sectors.  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 650-52 (2020) (holding 42 U.S.C. § 2000e-2(a)(1) bars discrimination based on sexual orientation).

The government incorrectly claims (at 10) that Maltinsky must establish that his sexual orientation was a "but-for caus[e]" of his termination, but that is not the only way to make out a discrimination claim under Title VII.  Rather, it is well established in the D.C. Circuit that causation can also be established if a protected characteristic was merely "a factor motivating" an employee's termination.  *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (citation omitted) (reaching that conclusion in the federal-sector context by drawing on Title VII provisions applicable to private-sector claims).

That conclusion is well supported by the Supreme Court's decision in *Babb v. Wilkie*, 589 U.S. 399 (2020) (*Babb I*), which held that plaintiffs asserting claims under the federal-sector provision of the Age Discrimination in Employment Act of 1967 ("ADEA") need not show that age was a but-for cause of the challenged personnel action.  *Babb I*, 589 U.S. at 402, 404, 413. Instead, the broadly written statute—which specifies that federal personnel actions "shall be made free from any discrimination based on age," 29 U.S.C. § 633a(a)—"demands that personnel

9

actions be untainted by *any* consideration of age." *Babb I*, 589 U.S. at 402 (emphasis added).  As the D.C. Circuit explained in a similar decision predating *Babb I*, to be "faithful" to the "sweeping" language in Section 633a(a), "plaintiffs may . . . prevail" merely "by proving that age was *a* factor in the employer's decision."  *Ford v. Mabus*, 629 F.3d 198, 205-06 (D.C. Cir. 2010). The government has recognized in other cases, as it must, that *Babb I*'s analysis applies with equal force to the federal-sector provision of Title VII, which is materially identical.  *See* 42 U.S.C. § 2000e-16(a) ("[a]ll personnel actions . . . shall be made free from any discrimination based on . . . sex"); *see also, e.g.*, *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1199-1200, 1205 (11th Cir. 2021) (*Babb II*).

At summary judgment, a plaintiff may establish discrimination either through direct evidence or "through circumstantial evidence using the familiar three-part burden-shifting framework" outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973).  *Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017).  Using circumstantial evidence, the plaintiff first bears the burden of establishing a "prima facie case" of discrimination; second, the employer must then articulate a "legitimate, nondiscriminatory reason" for terminating the plaintiff; and finally, the plaintiff must show that the employer's articulated reason is a pretext to mask unlawful discrimination.  *McDonnell Douglas*, 411 U.S. at 802-04.  To make out a prima facie case of discrimination at summary judgment, a plaintiff must demonstrate *only* that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (citation modified).

At the pleading stage, the plaintiff's burden is lighter still.  "[A] plaintiff need not plead facts establishing a *prima facie* Title VII case to survive a motion to dismiss."  *Townsend*, 236 F.

10

Supp. 3d at 309; *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir 2008). The *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); *Winston v. Clough*, 712 F. Supp. 2d 1, 13 n.10 (D.D.C. 2010). Instead, at the motion-to-dismiss stage, "the guiding lodestar is whether, assuming the truth of the factual allegations, taken collectively," the "inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend*, 236 F. Supp. 3d at 298.

To be sure: While a plaintiff is not *required* to allege a prima facie case of discrimination in his complaint under *McDonnell Douglas*, such allegations are *sufficient* to state a claim of discrimination that should proceed to discovery. *See Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017). And, even at the summary-judgment stage, the "prima facie burden . . . is not onerous." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (citation modified).

*Retaliation claim*. Title VII does not include an express antiretaliation provision applicable to federal employees, but the D.C. Circuit has construed the statute to bar retaliation against federal employees for engaging in protected activity. *See, e.g.*, *Ramos v. Garland*, 77 F.4th 932, 938 (D.C. Cir. 2023) (drawing on private-sector antiretaliation provision, 42 U.S.C. § 2000e-3(a), which bars employers from "discriminat[ing] against" an employee "because" that individual "opposed any practice" that is unlawful under Title VII or because that individual "participated in" a Title VII proceeding). That conclusion accords with *Gomez-Perez v. Potter*, 553 U.S. 474 (2008), which interpreted the ADEA's materially identical prohibition on age discrimination against federal employees to bar retaliation. *Id.* at 477, 479 (holding statutory prohibition on "discrimination based on age" encompasses retaliation based on filing an age-discrimination complaint).

11

A plaintiff bringing a retaliation claim under Title VII's federal-sector provision must establish that his protected activity was a motivating factor for a challenged adverse action, but he need not show the protected activity was a but-for *cause* of the action.  That conclusion follows from the Supreme Court's recent decision in *Babb I*, which held that the ADEA's materially identical prohibition on age discrimination in the federal sector does not require plaintiffs to show that age was a but-for cause of a personnel action.  *Babb I*, 589 U.S. at 402, 404, 413.  Other courts of appeals that have evaluated how *Babb I* applies to federal employees' Title VII retaliation claims have agreed that protected activity need not be a but-for cause of an adverse action to state a retaliation claim.  *See, e.g.*, *Babb II*, 992 F.3d at 1199-200, 1205 (explaining that the Supreme Court's decision in *Babb I* "all but prewrote [the court's] decision today" and that the government conceded as much (citation omitted)); *Huff v. Buttigieg*, 42 F.4th 638, 644-46 (7th Cir. 2022)); *accord* Equal Employment Opportunity Commission, *EEOC Enforcement Guidance On Retaliation and Related Issues*, 2016 WL 4688886, at *22 (2016) (explaining that "in Title VII and ADEA cases against a federal employer, retaliation is prohibited if it was a motivating factor"; the "'but for' standard does not apply").

To be sure, some D.C. Circuit decisions in the federal-sector context have reflexively cited private-sector Title VII decisions for the proposition that federal employees must establish that their "protected activity was a but-for cause of [an] adverse action."  *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024) (citing *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352-62 (2013) (holding that such a but-for-causation standard applies to private-sector Title VII retaliation claims under 42 U.S.C. § 2000e-3(a)).  But no D.C. Circuit decision has grappled with *Babb I*, which effectively overruled such contrary circuit precedent.

12

*See Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023) ("For a panel to reconsider a prior decision of this court in favor of a new Supreme Court precedent, the Court's intervening decision must effectively overrule, *i.e.*, eviscerate the law of our circuit." (citation modified)); *Babb II*, 992 F.3d at 1199-200, 1205 (holding that *Babb I* abrogated prior contrary circuit precedent on the causation standard for federal-sector Title VII retaliation claims); *Huff*, 42 F.4th 644-46 (applying *Babb I* to federal-sector Title VII retaliation claim even in the face of inconsistent prior circuit precedent). To the extent, however, that this Court determines it is bound by the but-for causation standard recited in some D.C. Circuit cases, *see Save Jobs USA v. U.S. DHS*, 111 F.4th 76, 80 (D.C. Cir. 2024), Plaintiff preserves the issue for review on appeal.

Regardless of whether this Court applies a but-for or motivating-factor standard, a plaintiff can establish a retaliation claim either via direct evidence or via the *McDonnell Douglas* framework discussed above. *Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016); *cf. Ponce*, 679 F.3d at 844-45 (explaining *McDonnell Douglas* can be used to establish but-for causation or motivating-factor discrimination).

## B.   Plaintiff adequately alleged a Title VII discrimination claim.

Count Five of the First Amended Complaint plausibly alleges a Title VII discrimination claim. Indeed, the "factual allegations, taken collectively" more than plausibly state a claim. *Townsend*, 236 F. Supp. 3d at 298. There is no dispute that Maltinsky suffered an adverse employment action: Defendants fired him. In addition, Maltinsky plausibly alleged the required causal link—that his sexual orientation was a motivating factor in that decision. Indeed, even if Maltinsky were required to allege that discrimination was a but-for cause of his termination, the First Amended Complaint easily passes muster.

Consider the facts, which are egregious. Maltinsky is openly gay and was a prominent leader in the Bureau's efforts to combat the hostile work environment for LGBTQIA+ employees.

13

FAC ¶¶ 23-26, 74.  The flag that Maltinsky displayed is well-known symbol of the LGBTQIA+ community.  *Id*. ¶ 27 n.4.  Meanwhile, Defendants admitted they fired Maltinsky because of the flag.  *Id*. ¶ 42.  These facts *alone* would be more than enough make "the inferences of discrimination drawn by the plaintiff" "reasonable and plausibly supported."  *Townsend*, 236 F. Supp. 3d at 298.  Targeting a gay man because he displayed a symbol associated with his sexual orientation is evidence of discrimination—just like terminating a Jewish person for displaying a Star of David is evidence of discrimination based on religion, or terminating a French person for displaying the tricolor is evidence of national origin discrimination.  *See Daniels v. City of Arlington*, 246 F.3d 500, 506 (5th Cir. 2001).  Indeed, such allegations are far more probative than others that courts have deemed sufficient despite sharing more tenuous connections to protected characteristics.  *See, e.g., Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 89 (D.D.C. 2012) (denying motion to dismiss age-discrimination claim based on plaintiff's allegation that she had been called "one of the 'GOLDEN GIRLS'").

But it gets worse.  Maltinsky's supervisor expressly *approved* his display of the flag, and the field office's Chief Division Counsel likewise confirmed that the flag and the small placard "did not violate any policy, rule, or regulation."  FAC ¶¶ 33-34.  The fact that Defendants abruptly changed course and fired Maltinsky for displaying the same flag that his leadership had approved—without any warning or explanation—is strong evidence of their improper motive.  *See Brady*, 520 F.3d at 495 n.3 (discrimination can be shown by "the employer's failure to follow established . . . criteria"); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (deviation from normal procedural and substantive standards is indicative of discrimination under Equal Protection Clause).  Maltinsky's firing is all the more head-scratching—and

14

suspicious—because it occurred several months *after* he had packed up his office with the flag display and moved across the country to train to become a Special Agent.  FAC ¶¶ 35-42.

The broader context reinforces the inference of discrimination.  Maltinsky was fired after successfully completing 16 weeks of a 19-week training program to be a Special Agent, *id.* ¶ 39, and following a successful 15-year career during which he repeatedly distinguished himself, earning multiple awards and a promotion, assuming leadership roles, and developing expertise relevant to the operations of the Bureau.  *Id.* ¶¶ 11-14, 23-28.  There is no indication that Maltinsky's "performance" was "below [his] employer's legitimate expectations," nor did the FBI ever claim it was eliminating his position.  *George*, 407 F.3d at 412 (inference of discrimination created by showing discharge not attributable to "performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether").  Rather, the reason the FBI cited in cutting Maltinsky's career short—that the pride flag displayed in his office qualified as an "political signage" that was so "inappropriate" he had to be terminated immediately—is utterly implausible, underscoring that discrimination was afoot.  *See, e.g.*, *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (a court need not credit a defendant's justification where it is "so weak, implausible, inconsistent, or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination").

The First Amended Complaint also alleges that Maltinsky was treated differently from similarly situated colleagues.  This kind of comparator evidence is not necessary at the pleading stages.  But it further supports an inference of discrimination.  *See George*, 407 F.3d at 412.

The First Amended Complaint is clear: "Other employees who were not openly gay and who had signage that could be labelled as 'political' were not removed from federal service."  FAC ¶ 77.  Instead, other employees were permitted "to display signage that alters the traditional colors

15

of the American flag to include a blue line," "signage like the Gadsden flag, a Revolutionary War era flag that has come to be associated with a right-leaning movement," and "so-called Punisher iconography, a graphic image of a skull that has come to be associated, in part, with anti-government militias." *Id.* ¶ 30. "Defendant Patel himself distributes challenge coin featuring the blue line, the Punisher symbol, and the Gadsden flag." *Id.* ¶ 31. In short, although not necessary at the pleading stage, Maltinsky more than plausibly alleged that he was treated differently from similarly situated colleagues who displayed charged symbols.

What few arguments Defendants muster in response do not pass scrutiny. Defendants suggest that there is no evidence in the First Amended Complaint that Defendants acted with "hostility toward gay employees." Mot. 10. This beggars belief. By their own admission, Defendants fired Maltinsky *for displaying a gay pride flag*. What more evidence of discrimination against gay employees is necessary? No one would seriously suggest that firing someone for displaying a Star of David did not evince discrimination against Jewish employees. *Cf. Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."). So too, targeting someone for displaying a pride flag is evidence of discrimination toward gay employees. But the evidence of discrimination runs even deeper. Defendants simultaneously permitted employees to display all kinds of other (extremely controversial) iconography. This kind of selective enforcement—targeting the symbol of the LGBTQIA+ community for uniquely harsh treatment—puts a lie to Defendants' statement that they believed Maltinsky "exercised poor judgment" and is instead a strong indicator of their discrimination. FAC ¶ 42.

Defendants assert that the First Amended Complaint contains no "factual allegations that Director Patel or any other decisionmaker" "knew Plaintiff's sexual orientation." Mot. 10. But a

16

plaintiff need not include specific allegations conclusively establishing that Defendants had specific knowledge at the motion-to-dismiss stage. *Williams v. District of Columbia*, 317 F. Supp. 3d 195, 200 (D.D.C. 2018) (observing that the "depth of the terminating officials' knowledge" of a Title VII plaintiff's protected status raises a "factual question[] . . . not properly resolved at the motion-to-dismiss stage when all reasonable inferences must be drawn to the plaintiff's benefit" (quoting *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 723 (D.C. Cir. 2007))).

Regardless, Defendants are wrong. It is more than plausible that the ultimate decisionmaker knew about Maltinsky's sexual orientation. After all, Defendants singled out and fired Maltinsky for displaying a pride flag, which the FBI had provided Maltinsky after he, an openly gay man, had worked to combat discrimination in the workplace. *See e.g.*, FAC ¶¶ 23-26 (detailing Maltinsky's well-known and recognized efforts). It strains credulity to suggest Defendants, who presumably conducted an investigation before firing Maltinsky, would be unaware of the circumstances surrounding the flag, including Maltinsky's sexual orientation. *See Larae S. v. McDonough*, No. 2022004338, 2024 WL 1701266, at *5 (EEOC Apr. 8, 2024) (finding at summary judgment that, among other things, fact that employee wore "rainbow lanyard" raised inference that supervisor knew of "sexual orientation"). To the extent that Defendants consciously "avoided knowledge" that Maltinsky was gay, that is no excuse. *Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.*, 697 F. Supp. 3d 112, 122 (S.D.N.Y. 2023) (quotation marks omitted). As a matter of law, in such circumstances, knowledge of an employee's status can be imputed to the employer who sticks his head in the sand. *Id*.

Defendants try to downplay the comparator evidence—which, again, is not necessary at this stage and just gilds the lily—by suggesting that the First Amended Complaint lacks "facts

17

showing that the individuals associated with [other political] displays were similarly situated in any relevant respect." Mot. 11. That is incorrect. Defendants provided one justification for terminating Maltinsky: that he "exercised poor judgment with an inappropriate display of political signage." FAC ¶ 42. Meanwhile, Defendants did not similarly discipline employees "who were not openly gay and who had signage that could be labelled as 'political.'" *Id*. ¶ 77. Those employees "were not removed from federal service." *Id*. Instead, Defendants routinely permit employees to display the thin blue line flag, the Gadsden flag, and Punisher iconography—some of the most political signage imaginable. *Id*. ¶ 30. That Defendants treated these two groups so radically differently is evidence that hostility toward the pride flag and the sexual orientation it represented was a motivating factor in Maltinsky's firing. *See, e.g.*, *McNair*, 213 F. Supp. 3d at 87 (holding administrative judge adequately pleaded race-discrimination claim because she alleged that other administrative judges of a different race were allowed to telework but she was not); *Rhone v. Rubio*, No. 24-cv-3389 (RC), 2025 WL 3017791, at *6 (D.D.C. Oct. 28, 2025) (holding Black plaintiff adequately pleaded causal connection between race and her forced resignation as leader of affinity group because she alleged that white employee remained the a leader of another affinity group, and both women were "conceivably subject to the same . . . 'policy decision'" under which plaintiff "was forced to resign").

The D.C. Circuit case Defendants cite—*Joyner v. Morrison & Foerster LLP*, 140 F.4th 523 (D.C. Cir. 2025)—confirms these facts suffice at the motion-to-dismiss stage. *Joyner* stressed that, at such an early stage in the proceedings, a plaintiff proceeding only via comparator evidence need *not* demonstrate that "all of the relevant aspects of his employment situation were nearly identical to those of the comparators." *Id*. at 529 (citation modified). Instead, the plaintiff need provide only "enough facts about those comparators and the relevant context to allow a plausible inference

18

that he was treated differently because of his [protected status]." *Id*. at 530. The "standard cannot be reduced to a mechanical formula; it is sensitive to the specific context of each case." *Id*. at 531. (explaining "[t]he traits a [plaintiff] must plead about comparators to provide a benchmark . . . will vary widely from case to case").

Here, the First Amended Complaint provides relevant details giving rise to a plausible inference of discrimination: It identifies the extremely controversial political paraphernalia Defendants permitted, in contrast to Defendants' harsh treatment of a flag associated with Maltinsky's sexual orientation, putting the lie to the suggestion that Maltinsky was really fired for exercising "poor judgment." FAC ¶ 42. Maltinsky need not identify "heterosexual" employees who "engaged in the same conduct" to establish an inference of discrimination, Mot. 10, any more than a Jew proceeding with a religious discrimination claim would need to prove that a gentile had not been disciplined for wearing a yarmulke. The fact that Defendants targeted Maltinsky for displaying a pride flag—a symbol so closely associated with his sexuality—is evidence enough of discrimination.

It bears remembering that "the factual detail required to survive a motion to dismiss can be quite limited." *McNair*, 213 F. Supp. 3d at 86-87 (citation omitted). Maltinsky's First Amended Complaint far surpasses the applicable standard, clearly giving rise to a plausible inference of discrimination and "'a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim." *Joyner*, 140 F.4th at 530 (quoting *Twombly*, 550 U.S. at 556).

**C.      Plaintiff adequately alleged a Title VII retaliation claim.**

Count Six of the First Amended complaint alleges a plausible Title VII retaliation claim. Defendants do not dispute (at 13) that Plaintiff engaged in protected activity through his extremely prominent work to oppose discrimination at the Bureau—efforts the FBI and DOJ recognized through multiple awards and, most importantly, by entrusting him with the flag at issue in this case.

19

*See* FAC ¶¶ 26-28.[1]  The parties likewise agree that Maltinsky suffered an adverse action when he was terminated from the FBI.  *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009).

The First Amended Complaint also plausibly alleges the necessary causal link between Maltinsky's protected activity and the termination, regardless of whether this Court applies a motivating-factor or but-for-cause standard.  "Direct evidence" of retaliatory animus is not required, especially as this early stage of the proceedings.  *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (observing direct evidence is the "exception rather than the rule," even at summary judgment).  But here, Plaintiff has provided it: Defendants admitted that they dismissed Maltinsky because he displayed *the very flag* that the FBI gave him to commemorate his protected activity opposing discrimination.  FAC ¶¶ 42, 84, 86.  An employer who targets an employee because he was recognized for opposing discrimination engages in retaliation.

Moreover, the suspicious surrounding circumstances discussed above (*supra* at pp.14-15)—including the fact that Defendants overrode Maltinsky's supervisor and the field office's Chief Division Counsel, who had authorized his displaying the flag—provides a strong indication of Defendants' improper and retaliatory purpose.  *See Allen*, 795 F.3d at 40 (explaining that "common ways" of proving a retaliatory motive include showing "that the employer failed to "follow established . . . criteria" for the decision (citation omitted)).  Indeed, as explained, it is hard to give credence to Defendants' proffered justification for firing Maltinsky—that his pride flag was "political signage" that was so "inappropriate" it warranted the extreme measure of immediate termination—particularly when Defendants permitted the display of other "political"

---

[1] *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271 (2009) (employee's participation in an internal investigation is protected by Title VII's retaliation provision); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (male plaintiff's complaint about alleged mistreatment of female employees is protected activity).

20

signage in the workplace, such as the Gadsden flag.  Together, these circumstantial allegations easily clear the low bar for alleging Defendants' retaliatory motive.  *See, e.g.*, *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69-70 (D.C. Cir. 2015) (holding that allegations suggesting that the plaintiff's termination was not attributable to poor performance or the elimination of his position were "enough to survive a motion to dismiss"; explaining that allegations suggesting the employer offered a pretextual justification for the plaintiff's removal added even more support).

Defendants offer the thinnest of responses.  Defendants (at 13) fault Maltinsky for not alleging that Defendant Patel was personally aware of Plaintiff's protected activity.  But even at the summary-judgment stage, the plaintiff "needn't provide direct evidence that his supervisors knew of his protected activity; he need only offer circumstantial evidence that could reasonably support an inference that they did." *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).  Here, the circumstantial evidence is legion: Maltinsky's work on the FBI's diversity initiatives was prominent within the Bureau.  *See* FAC ¶¶ 23-26, 28-29.  Maltinsky chaired the Bureau Equality Committee, *id*. ¶ 24, authored a key report against discrimination targeting LGBTQIA+ individuals, *id*. ¶ 25, briefed senior leadership on the report, *id*., developed a training course to "address the discriminatory and harassing actions raised in the report," *id*., advised leadership on personnel relocation issues, *id*. ¶ 26, organized the "Out & Equal" summit in Washington, D.C., *id.*, and "served as an advisor to different components throughout the FBI concerning LGBTQIA+ issues," *id*.  Maltinsky was also repeatedly recognized by the Bureau for his advocacy to "advanc[e] equal opportunity, diversity, and inclusion." *Id*. ¶ 26.  This is not a case where the protected activity was a minor afterthought.  It was a defining feature of Maltinsky's (stellar) career

21

at the agency.  These facts are thus strong circumstantial evidence that the officials involved in the termination process knew about Maltinsky's protected activity—and targeted him because of it.

Moreover, it is the height of implausibility to assume that Defendants *never* learned of the story behind the very flag Defendants cited as the cause for terminating Maltinsky—the flag the FBI had gifted to him in recognition of his protected activity.  *See Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 85-86 (D.D.C. 2016) (evidence of opportunity to describe relevant protected activity to leadership was sufficient to establish circumstantial evidence of knowledge).  Again, the FBI's most senior leadership targeted Maltinsky *personally* because he displayed a flag the Bureau gifted *to him* in recognition of his protected activity.  It suspends disbelief to suggest that "the decisionmaker was" not "aware of" his "prior protected activity" when signing a termination letter referring to that very activity, and that the decision was unrelated to Maltinsky's efforts to combat discrimination against the LGBTQIA+ community.  Mot. 14.

Defendants argue (at 14-15) that the time between when Maltinsky engaged in protected activity and his firing lessens any causal relationship between the two.  To be clear, given the express and circumstantial evidence of retaliation, Maltinsky need not rely on timing to prove his claim.  *See, e.g.*, *Allen*, 795 F.3d at 40 (describing the many ways plaintiffs can show retaliatory motive).  But if anything, the sequence of Defendants' actions indicates that they engaged in retaliation: Defendant Patel fired Maltinsky in October 2025, just a half year after Defendant Patel took office.  *See Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105, 136 (D.D.C. 2025) (finding "retaliatory animus" in First Amendment case where Federal Trade Commission Chairman "wasted no time after taking office to initiate" "investigation"); *see also Templeton v. First Tenn Bank*, 424 F. App'x 249 (4th Cir. 2011) (refusal to rehire woman who resigned two years earlier because of management's failure to address sexual harassment complaints raised issue of

22

retaliation despite remoteness in time where refusal to hire was company's first opportunity to retaliate). That Defendant Patel rushed to take this egregious action reinforces that he had an improper motive.

## II.   PLAINTIFF PROPERLY PLEADED FIFTH AMENDMENT CLAIMS.

Plaintiff has pleaded sufficient facts to state claims under the Fifth Amendment in Counts Three and Four. FAC ¶¶ 60-72. The Fifth Amendment prohibits the federal government from denying equal protection of the law and engaging in employment discrimination. U.S. Const. amend. V; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Brown v. GSA*, 425 U.S. 820, 825 (1976). Defendants violated the Fifth Amendment by (1) targeting Maltinsky for displaying his pride flag, a reflection of his association with, and support for, the LGBTQIA+ community; and (2) discriminating against Maltinsky, a gay man, based on his sexual orientation.

Defendants do not dispute that the facts—as alleged—violate the Fifth Amendment. Instead, Defendants argue that Title VII provides the exclusive remedy for Plaintiff's discrimination claims. In making this argument, Defendants rely (at 7-8) on precedent holding that Title VII precludes federal employees covered by that statute from pursuing equal-protection claims. *See, e.g.*, *Kizas v. Webster*, 707 F.2d 524, 543 (D.C. Cir. 1983) (holding that federal employees covered by Title VII "may not" pursue equal-protection claims, "circumvent[ing] the 'careful and thorough remedial scheme' Congress ordered for them" (quoting *Brown*, 425 U.S. at 833); *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (holding "federal employees [cannot] bring parallel actions under both Title VII and other provisions of federal law [such as the Fifth Amendment] to redress the same basic injury" and explaining that litigants could otherwise "evade" Title VII's "rigorous administrative exhaustion requirements and time limitations" (citation omitted)).

23

But the government has repeatedly taken the position—including in the administrative phase of this case—that Title VII is unconstitutional as applied to at least some federal employees. Indeed, the Department of Justice dismissed Maltinsky's Title VII administrative complaint on the ground that his "termination was pursuant to 'the FBI Director's authority under Article II of the Constitution' and thus beyond the purview of Title VII." FAC ¶ 10. In short, the Department took the view that Title VII did not apply to Maltinsky. Therefore, out of an abundance of caution, Plaintiff brought Fifth Amendment claims to be able to argue that—if Title VII did not apply— the Fifth Amendment nevertheless prohibited unlawful discrimination. After all, Title VII plainly would not preclude Plaintiff's equal-protection claims if he is not covered by the statute in the first place. *See Ethnic Emps.*, 751 F.2d at 1415 (holding that in enacting Title VII, Congress did not "intend[] to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all"); *Kizas*, 707 F.2d at 542 (explaining that Title VII does not categorically foreclose equal-protection claims by federal employees who are "unprotected" by Title VII (citation omitted)).

If Defendants will not concede that Title VII applies to this case and is constitutional, dismissing Plaintiff's Fifth Amendment claims would be premature. Otherwise, the government could prompt the dismissal of the Fifth Amendment claims now, attack the constitutionality of Title VII claims at a later stage in the proceeding, and leave Maltinsky with no avenue for relief. The Court should reject such gamesmanship. But if Defendants irrevocably waive their Article II arguments against the applicability of Title VII, Maltinsky would not object to the dismissal of these constitutional claims.

## III.    PLAINTIFF ADEQUATELY PLEADED A MANDAMUS CLAIM.

Plaintiff has appropriately requested "a writ of mandamus," "*in the alternative*," should the Court find it cannot otherwise provide him effective relief. FAC ¶¶ 96-98 (emphasis added). It is

24

typical practice for this Court to maintain an alternative mandamus claim in a case until the Court has determined what other forms of relief are, in fact, available.  Meanwhile, the government has recently and aggressively contested the availability of equitable remedies in other cases involving federal workers, and Defendants have not disclaimed doing so here.[2]

In *Kirwa v. Dep't. of Def.,* 285 F. Supp. 3d 257, 275 (D.D.C. 2018) (Huvelle, J.), the court explained that plaintiffs are not precluded from "pleading their alternative relief," particularly where "defendants continue to dispute the Court's authority to grant plaintiffs [requested] relief." *Id.* at 275-76.  Other judges in this District similarly maintain the mandamus claim until the end of the proceedings.  *See, e.g.*, *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 199-201 (2024) (Lamberth, J.) (explaining that "[s]ome courts have held that dismissing an otherwise-well-pleaded mandamus claim due to the coexistence of a plausible APA claim is 'premature' at the motion to dismiss stage"); *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 44 (D.D.C. 2002) (Sullivan, J.) (explaining that it would be "premature and inappropriate" to dismiss a mandamus claim at the pleadings stage because Plaintiffs successfully pleaded another claim to relief); *Citizens for Resp. & Ethics in Wash. v. Exec. Off. of the President*, 587 F. Supp. 2d 48, 63 (D.D.C. 2008) (Kennedy, J.) (holding that the court may not "rule as a matter of law that plaintiffs will not be entitled to mandamus relief" at the motion-to-dismiss stage). Thus, "it would be premature to dismiss a cause of action on the ground that an adequate alternative remedy exists before determining the contours of that remedy and plaintiffs' entitlement to that remedy." *Kirwa*, 285 F. Supp. 3d at 275-76.

---

[2] For example, in cases involving wrongfully fired workers with Civil Service Reform Act rights before the Merit Systems Protection Board, the federal government has consistently argued against reinstatement. *See, e.g.*, Agency's Closing Brief 14, *Twomey v. Department of Justice*, No. DC-0752-25-1950-I-1 (M.S.P.B. July 15, 2025), https://perma.cc/YXM2-66W6.

Nor are Defendants correct (at 15-16) that Plaintiff has not adequately alleged the other two requirements for obtaining mandamus relief—(1) that he has a "clear and indisputable right to relief" and (2) that the government "is violating a clear duty to act."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  This case is not about the FBI's general approach to the "selection, training, and retention of potential FBI agents," as Defendants contend (at 16).  Rather, Plaintiff mounts a simple and straightforward challenge: The FBI violated the First Amendment, the equal-protection component of the Fifth Amendment, and Title VII when it fired him for displaying a pride flag at his workstation.  Defendants do not even *attempt* to seek dismissal of Plaintiff's constitutional claims on the merits or his requests for nonmonetary relief, underscoring that he has adequately alleged the final two requirements necessary for his mandamus claim to proceed past the motion-to-dismiss stage.

## IV.    THE FEDERAL GOVERNMENT HAS WAIVED ITS SOVEREIGN IMMUNITY FOR BACK PAY AND OTHER MONETARY RELIEF.

This Court should also maintain Maltinsky's request for back pay, interest, and other monetary relief (FAC 21).  As Defendants appear to recognize (at 16), it is settled law that Title VII waives the federal government's sovereign immunity for such relief.  *See* 42 U.S.C. § 2000e-16(d) (incorporating 42 U.S.C. § 2000e-5(g), which provides for back pay in cases involving intentional discrimination); *id.* (authorizing "the same interest to compensate for delay in payment" that is available "in cases involving nonpublic parties"); 42 U.S.C. § 1981a(a)(1) (providing for compensatory damages against the federal government in Title VII cases involving intentional discrimination); *see also West v. Gibson*, 527 U.S. 212, 222 (1999); *Rochon v. Gonzales*, 438 F.3d 1211, 1215-16 (D.C. Cir. 2006).  This Court therefore need not evaluate whether any other statute

26

*also* waives the federal government's sovereign immunity as to back pay and other monetary relief, the issue Defendants address at length (at 16-19).[3]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' partial motion to dismiss.

July 15, 2026

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
  (D.C. Bar. No. 1724093)
SYDNEY FOSTER
  (D.C. Bar No. 982340)
ROSA L. BAUM
  (D.C. Bar No. 90032839)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org
sfoster@washingtonlitigationgroup.org
rbaum@washingtonlitigationgroup.org

---

[3] Although this Court need not reach the issue, the Back Pay Act also waives the federal government's sovereign immunity for an award of back pay with interest. That law provides that any "employee of an agency" who, on the basis of a "timely appeal or an administrative determination," "is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action" is "entitled" to back pay with interest. 5 U.S.C. § 5996(b)(1)-(2). The governing regulations have long defined "appropriate authority" to include "an entity having authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action," including "a court" like this one. 5 C.F.R. § 550.803; *Brown v. Sec'y of the Army*, 918 F.2d 214, 216, 218 (D.C. Cir. 1990) ("[A]n 'appropriate authority' (the district court) has found that the challenged personnel actions were 'unjustified or unwarranted' under applicable law (Title VII).").

CHRISTOPHER M. MATTEI
  (DDC No. CT0029)
MARGARET M. DONOVAN
  (DDC No. CT0026)
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
cmattei@koskoff.com
mdonovan@koskoff.com

KERRIE D. RIGGS
  (DDC No. 995784)
JEREMY D. WRIGHT
  (*Application for admission
  forthcoming*)
KATOR, PARKS, WEISER & WRIGHT,
P.L.L.C.
1150 Connecticut Ave., N.W., Suite 705
Washington, D.C. 20036
Phone: (202) 898-4800
Fax: (202) 289-1389
kriggs@katorparks.com
jwright@katorparks.com