**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DAVID M. MALTINSKY<br><br>    *Plaintiff*,<br><br>v.<br><br>KASHYAP P. PATEL, in his official capacity as Director, Federal Bureau of Investigation, United States Department of Justice, *et al*.,<br><br>    *Defendants*. | Case No. 1:25-cv-04031-RJL |

**REPLY IN SUPPORT OF DEFENDANTS'**
**PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 3

I.      Plaintiff's Title VII Claims Should Be Dismissed................................................. 3

    A.      Plaintiff Must Plausibly Allege Facts Establishing But-For Causation.............. 3

    B.      Plaintiff Does Not Plausibly Allege Disparate Treatment Based on His Sexual Orientation ............................................................................................... 5

    C.      Plaintiff Does Not Plausibly Allege Retaliation Based on Prior Protected Title VII Activity .............................................................................................. 10

II.     Plaintiff's Fifth Amendment Claims Should Be Dismissed ................................. 12

III.    Plaintiff Has Not Stated a Claim for Mandamus Relief ....................................... 14

IV.     Plaintiff's Request for Back Pay Should Be Dismissed ....................................... 15

CONCLUSION .................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Allen v. Johnson*, 795 F.3d 34 (D.C. Cir. 2015) .................................................................. 11

*Babb v. Wilkie*, 589 U.S. 399 (2020) ....................................................................... 3, 4, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................ 5

*Bilal v. Metro. Police Dep't*, 2025 WL 1917959 (D.D.C. July 11, 2025)........................... 9

*Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77 (D.D.C. 2012) .......................................... 7

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008)................................ 8

*Brown v. GSA*, 425 U.S. 820, 829 (1976) ........................................................................ 12

*Brown v. Sec'y of the Army*, 918 F.2d 214 (D.C. Cir. 1990) ........................................... 16

*Consol. Edison Co. v. Ashcroft*, 286 F.3d 600 (D.C. Cir. 2002)...................................... 15

*Daniels v. City of Arlington*, 246 F.3d 500 (5th Cir. 2001) .............................................. 7

*George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005) .............................................................. 8

*Ho v. Garland*, 106 F.4th 47 (D.C. Cir. 2024)................................................................... 3

*Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) ............................................................. 15

*In re Nat'l Nurses United*, 47 F.4th 746 (D.C. Cir. 2022) .............................................. 14

*Johnson v. Georgetown Univ.*, 2026 WL 879522 (D.D.C. Mar. 31, 2026)........................ 9

*Kizas v. Webster*, 707 F.2d 524 (D.C. Cir. 1983) ............................................................ 13

*Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181 (2024)............................................. 15

*Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105 (D.D.C. 2025) ............................... 12

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)................................................................. 1

*Ponce v. Billington*, 679 F.3d 840 (D.C. Cir. 2012) ........................................................ 15

*Richardson v. Wiley*, 569 F.2d 140 (D.C. Cir. 1977)........................................................ 13

*Templeton v. First Tenn Bank*, 424 F. App'x 249 (4th Cir. 2011)................................... 12

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) ...................................... 5

*United States v. Fausto*, 484 U.S. 439 (1988) ....................................................... 16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .................... 8

*Weber v. Department of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008)........................ 16

*Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007)............................................................ 11

*Young v. Dillon Cos.*, 468 F.3d 1243 (10th Cir. 2006)........................................................ 8

**Statutes**

29 U.S.C. § 633a ........................................................................................................... 3

42 U.S.C. § 1981a........................................................................................................... 15

5 U.S.C. § 5596............................................................................................................... 16

5 U.S.C. § 7511............................................................................................................... 16

**INTRODUCTION**

This case is, at its core, a First Amendment dispute. Plaintiff alleges that he was terminated from probationary employment as a Federal Bureau of Investigation (FBI) Special Agent Trainee after FBI Director Kash Patel learned that Plaintiff had displayed a Progress Pride flag at his former workstation, which Director Patel characterized as "an inappropriate display of political signage" and an exercise of "poor judgment." Am. Compl. ¶ 42, ECF No. 15-2. Plaintiff contends that the flag expressed his views on a matter of public concern, that other employees were permitted to display different flags or symbols on other controversial political matters, and that his termination therefore constituted viewpoint discrimination and retaliation in violation of the First Amendment. Those constitutional claims turn on factual questions that Defendants expect to litigate through discovery and summary judgment under the standards in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

The Amended Complaint attempts to layer several additional employment-discrimination theories onto those same allegations, recasting them as claims of discrimination based on sexual orientation, retaliation under Title VII, and parallel equal protection claims under the Fifth Amendment. Plaintiff's opposition repeatedly asks the Court to infer that because he is openly gay, actions taken in response to his display of the Progress Pride flag necessarily constitute discrimination based on sexual orientation under Title VII. Plaintiff also asks the Court to infer that actions taken in response to his display of the Progress Pride flag in 2025 necessarily constitute retaliation because, in 2021, the same flag was gifted to him by the FBI's Los Angeles Field Office "in recognition of his past efforts to support the FBI's diversity initiatives." *Id.* ¶ 28. Plaintiff alleges that other employees were allowed to display other flags or symbols without

1

adverse action, but he advances no further facts suggesting that the challenged action was taken because of his sexual orientation or alleged prior Title VII activity rather than because of the expressive conduct that forms the basis of his First Amendment claims.

Plaintiff's remaining claims fare no better. His Fifth Amendment equal protection claims fail for the same substantive reasons, and are precluded in any event by Title VII's comprehensive remedial scheme. His Fifth Amendment, Appointments Clause, and ultra vires theories also rest on Article II arguments Defendants have not asserted in this case and therefore fail as a matter of law. Finally, because Plaintiff's Title VII claims should be dismissed, his corresponding requests for Title VII remedies should likewise be dismissed. Plaintiff cannot obtain monetary relief based solely on his constitutional claims on or any Title VII theory that fails to satisfy the causation required for retrospective relief.

Finally, although addressed separately in Defendants' opposition to Plaintiff's motion to schedule Rule 16 conference, *see* ECF No. 19, Defendants oppose Plaintiff's efforts to expedite discovery in this case. It is not an effort to "delay" a case to favor maintaining the ordinary course and schedule of litigation, first resolving a Rule 12 motion directed to legally deficient claims before the parties undertake discovery on theories that fail as a matter of law. Narrowing the case now, prior to the initiation of discovery, will promote efficient discovery and conserve the resources of both the parties and the Court by limiting discovery only to the claims properly before the Court.

## ARGUMENT

**I.      Plaintiff's Title VII Claims Should Be Dismissed**

**A.      Plaintiff Must Plausibly Allege Facts Establishing But-For Causation**

Plaintiff's opposition devotes substantial attention to *Babb v. Wilkie*, 589 U.S. 399 (2020), to argue that Plaintiff need only show that discrimination was a "factor" considered in the Director's termination decision. *See* ECF No. 18, Pl. Opp. at 9–10, 12–13. Post-*Babb*, however, the D.C. Circuit has continued applying the but-for causation standard in federal-sector Title VII cases. *See Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024). Moreover, Plaintiff's reliance on *Babb* misses the point; even if this Court were to extend the holding in *Babb* to federal sector Title VII cases, in departure from D.C. Circuit precedent, it would not change Plaintiff's burden to plead sufficient facts to establish that his sexual orientation was a but-for cause of his alleged differential treatment.

In *Babb*, the Supreme Court considered the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA), which requires that personnel actions "be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The Court parsed this statutory language, holding that "based on" denotes but-for causation, and explaining that the object of that causal requirement is "discrimination"—that is, differential treatment—not necessarily the ultimate personnel action itself. *Babb*, 589 U.S. at 405–06. Accordingly, the Court held that age must be a but-for cause of differential treatment to attach liability, but not necessarily a but-for cause of the ultimate personnel action. *Id.* The familiar example given by the Court was an employer who docks points from an applicant because of age but who would not have hired the applicant regardless. The employer has still engaged in unlawful discrimination because

age caused the differential treatment, even if it did not cause the hiring decision. *Id.* at 406–07.

Plaintiff's case is unlike the example in *Babb*, where the alleged discriminatory act (docking points because of age) was distinct from the ultimate personnel action (not hiring the applicant). Here, by contrast, Plaintiff does not identify any differential treatment distinct from the adverse personnel action itself. Plaintiff alleges that he was terminated after displaying a Progress Pride flag and further alleges that other employees were permitted to display different flags or symbols without being disciplined. The threshold question is why Plaintiff alleges he was treated differently at all. Under *Babb* and D.C. Circuit precedent, Plaintiff must plausibly allege that his protected characteristic was a but-for cause of the differential treatment—that is, that he was treated differently because he is gay, or because he engaged in protected Title VII activity. The Amended Complaint does not do so.

Finally, even if Plaintiff correctly reads *Babb* to eliminate the need to establish but-for causation to sustain a cause of action, *Babb* notably maintained that in order to obtain retrospective remedies, including reinstatement and back pay, the plaintiff's protected characteristic must be the but-for cause of the adverse action. *See* 589 U.S. at 407. Therefore, if this Court were to allow Plaintiff's Title VII claims to proceed based on Plaintiff's assumption that sexual orientation was "a factor" considered in the decision to fire him, Plaintiff could not obtain reinstatement or back pay remedies without a stronger showing that he would not have been fired but for his sexual orientation.

4

**B.      Plaintiff Does Not Plausibly Allege Disparate Treatment Based on His Sexual Orientation**

To survive a motion to dismiss, Plaintiff must allege facts that permit a plausible inference—not mere speculation—that his sexual orientation caused the alleged disparate treatment at issue. Plaintiff's opposition does not demonstrate that the Amended Complaint meets even this low threshold. Instead, it furnishes conclusions in place of alleged facts, asking the Court to infer that because Plaintiff is openly gay and displayed a Progress Pride flag, any adverse action taken in response necessarily constitutes discrimination based on sexual orientation. That allegation is not enough. Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (on a motion to dismiss, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint).

Plaintiff does not allege direct or plausible indirect evidence of disparate treatment because of his sexual orientation. Plaintiff simply assumes that because he is openly gay, Director Patel must have known that he was gay, and any action taken in response to his display of the Progress Pride flag necessarily establishes discrimination based on sexual orientation. That is not a reasonable inference to draw based on the allegations in the Amended Complaint.

Plaintiff first argues that the Progress Pride flag is synonymous with his sexual orientation and therefore that the adverse action taken in response to displaying the flag necessarily constitutes discrimination because of sex. ECF No. 18 at 13–14. But the

Amended Complaint does not support that conclusion, where Plaintiff himself alleges that the Progress Pride flag expressed his views "on a matter of substantial public concern." ECF No. 15-2, Am. Compl. ¶ 52. Having characterized the flag as expressive political speech for purposes of his First Amendment claims, Plaintiff cannot simultaneously assume that any employment action directed at the display of that expressive symbol necessarily constitutes discrimination because of sexual orientation. Allegations that Defendants objected to Plaintiff's display of the Progress Pride flag do not, without more, plausibly support this distinct inference.

Based on the Amended Complaint and common understanding, a Pride flag is an expressive symbol capable of conveying multiple messages. It is not merely a reflection of the identity of the person displaying it, nor is displaying it necessarily evidence of the displayer's sexual orientation. *Cf.* ECF No. 18, Pl. Br. at 19 (comparing a Pride flag to a yarmulke). Although traditionally associated with LGBTQ+ identity and advocacy, Pride flags are not used exclusively by gay people. Allies, businesses, advocacy organizations, community groups, and government entities display Pride flags as a means of social and political messaging; indeed, the FBI's Los Angeles Field Office allegedly did so in June 2021. Am. Compl. ¶ 27.

The Amended Complaint also establishes that the Progress Pride flag's political and social meaning extends beyond simply identifying one's sexual orientation. ECF No. 18, Pl. Opp. at 7. Plaintiff did not display the "traditional rainbow-colored flag that, historically, has served as a representative banner of the LGBTQIA+ community." *Id.* ¶ 27 n.4. Rather, he displayed the Progress Pride flag, which is a variation that contains five additional colors ("representing people of color and transgender and non-binary

6

people") in a chevron shape that is "intended to represent progress and forward movement." *Id.* And along with this display, Plaintiff posted a small placard describing the Progress Pride flag's meaning and history. *Id.* In this way, the analogies Plaintiff draws in his opposition to a Jew wearing a Star of David necklace, or a person of French origin displaying the tricolor flag, are inapt and incomplete. *See id.* at 1, 14.

Plaintiff cites *Daniels v. City of Arlington*, 246 F.3d 500, 506 (5th Cir. 2001), for the proposition that "[t]argeting a gay man because he displayed a symbol associated with his sexual orientation is evidence of discrimination—just like terminating a Jewish person for displaying a Star of David is evidence of discrimination based on religion, or terminating a French person for displaying the tricolor is evidence of national origin discrimination." *Id.* at 14. But *Daniels* did not hold that action against a symbol associated with a protected characteristic is evidence of discrimination based on that characteristic. *See* 246 F.3d at 503–07. If anything, *Daniels* illustrated the opposite proposition: an employer may regulate a symbol associated with a protected class for reasons directed at the symbol's context or manner of display, without necessarily discriminating against the employee's protected status. *See id.*

Further, Plaintiff cites *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 89 (D.D.C. 2012), to suggest that courts regularly accept relatively weak circumstantial allegations at the pleading stage. *See* ECF No. 18, Pl. Opp. at 14. But Plaintiff substantially overreads *Bowe-Connor*, which did not hold that a single age-related remark (labeling the plaintiff "one of the 'GOLDEN GIRLS'") sufficed to state a claim. *See* 845 F. Supp. 2d at 89. Rather, the court looked to the *pro se* plaintiff's EEO complaint and found "considerably more information about her ADEA claim," including allegations of a pay discrepancy

7

affecting an older employee and a lack of promotion or advancement opportunities. *Id.*
The court's decision to allow the ADEA claim to proceed was expressly informed by
those additional allegations. *Id.* Plaintiff fails to identify any other controlling or
persuasive authority supporting a Title VII discrimination claim under such bare and
conclusory allegations as those in the Amended Complaint.

Plaintiff's additional arguments fare no better because they still do not identify
plausible factual support for the inference that Defendants treated Plaintiff differently
because of his sexual orientation. Plaintiff shifts to pretext arguments, contending that the
stated reason for his termination is suspicious because his supervisors previously
approved the display and because he had an otherwise successful career. *See* ECF No. 18,
Pl. Op. at 14–15. But Plaintiff's pretext arguments and legal authorities are beside the
point.[1] Pretext presupposes that Defendants have articulated a lawful, nondiscriminatory
explanation for the challenged action. Here, Plaintiff's own theory is that Defendants
openly terminated him because of the display of the Progress Pride flag. *See* ECF No. 15-
2, Am. Compl. ¶¶ 5, 42, 51, 76, 83. Plaintiff's pretext argument is contrary to his First
Amendment claims and ultimately still fails to explain how his sexual orientation was an
independent but-for cause of the disparate treatment at issue. *Id.* at 15.

---

[1] For example, Plaintiff's opposition cites *Brady v. Office of Sergeant at Arms*, 520 F.3d
490, 495 n.3 (D.C. Cir. 2008) (evidence probative of pretext includes "changes and
inconsistencies in the stated reasons for the adverse action; the employer's failure to
follow established procedures or criteria; the employer's general treatment of minority
employees; or discriminatory statements by the decisionmaker"); *George v. Leavitt*, 407
F.3d 405, 412 (D.C. Cir. 2005) (discussing evidence of pretext); *Young v. Dillon Cos.*,
468 F.3d 1243, 1250 (10th Cir. 2006) (same); *Vill. of Arlington Heights v. Metro. Hous.
Dev. Corp.*, 429 U.S. 252, 267 (1977) (addressing discriminatory intent within the
context of a disparate impact case).

Finally, Plaintiff's comparator allegations still fail to give rise to an inference of discrimination. Those allegations concern employees who allegedly displayed other flags and symbols in the workplace, namely the "thin blue line" law enforcement support flag, the Gadsden flag, and "Punisher iconography." ECF No. 15-2, Am. Compl. ¶¶ 30–31, 58–59. Considered true under Rule 12(b)(6) for purposes of the Court's analysis at this stage, those allegations may bear on whether Defendants treated different forms of political expression differently. But they still fail to show that the individuals associated with those displays were similarly situated to Plaintiff in any relevant respect. Plaintiff alleges that Director Patel himself displays the thin blue line, Gadsden flag, and Punisher imagery on his challenge coins, and he is not similarly situated to Plaintiff. *See* ECF No. 18, Pl. Opp. at 18; ECF No. 15-2, Am. Compl. ¶¶ 30–31.

More fundamentally, Plaintiff's comparator allegations still do not suggest that Defendants treated gay employees differently from heterosexual employees. *See Johnson v. Georgetown Univ.*, 2026 WL 879522, at *12 (D.D.C. Mar. 31, 2026) (a comparator theory requires the plaintiff to "demonstrate 'dissimilar treatment of a similarly situated comparator without the protected characteristic'") (quoting *Bilal v. Metro. Police Dep't*, 2025 WL 1917959, at *3 (D.D.C. July 11, 2025)). Nothing in the Amended Complaint plausibly suggests that a heterosexual employee displaying a Progress Pride flag would have been treated differently from Plaintiff. *See Bostock v. Clayton County, Georgia*, 590 U.S. 644, 659–60 (2020) (considering whether changing the employee's protected characteristic while holding all else constant "would have yielded a different choice by the employer"). Plaintiff does not argue otherwise in his opposition.

9

**C.      Plaintiff Does Not Plausibly Allege Retaliation Based on Prior Protected Title VII Activity**

Plaintiff's retaliation claim fails for the same reason. The opposition points to Plaintiff's past support for FBI diversity initiatives and his alleged protected activity in 2019. But Title VII prohibits retaliation because an employee engaged in protected activity, not because an employee generally supports diversity or inclusion. Plaintiff incorrectly characterizes Defendants' memorandum in support of their partial motion to dismiss by suggesting that Defendants "do not dispute (at 13) that Plaintiff engaged in protected activity through his extremely prominent work to oppose discrimination at the Bureau." ECF No. 18, Pl. Opp. at 19. Defendants have identified only one instance of possible protected activity in the Amended Complaint: Plaintiff's drafting of a June 2019 report recommending action to address concerns of a hostile work environment for LGBTQ+ employees. *See* ECF No. 16, Def. Br. at 12–13. Plaintiff's attempt to equate all his work supporting diversity initiatives with protected Title VII activity should be rejected, as should his suggestion that he received the Progress Pride flag specifically because of his protected Title VII activity rather than his support of diversity initiatives more broadly.

Moreover, the Amended Complaint indicates that Plaintiff's work on behalf of FBI diversity initiatives ended in approximately 2020, as he was gifted the flag in 2021 "in recognition of his *past* efforts," and received an award in 2022 for past contributions. *See* ECF No. 15-2, Am. Compl. ¶¶ 2, 26, 28 (emphasis added). Even if Plaintiff's "past efforts to support the FBI's diversity initiatives," *id.* ¶ 28, could be considered "protected activity," ECF No. 18, Pl. Opp. at 22, Plaintiff never plausibly connects his alleged

10

general activity in support of the FBI's diversity programs through 2020 to Director Patel's termination decision in 2025.

"Cases asserting unlawful retaliation in violation of Title VII typically depend on circumstantial evidence of retaliatory motive." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015). As established in Defendants' memorandum in support, Plaintiff fails to allege any circumstantial evidence of "a causal link" between Plaintiff's protected activity and adverse employment action. *Id.* For example, "[t]he temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation." *Id.* at 40. But there is no temporal proximity between the sole protected activity alleged—the June 2019 report and recommendations—and Director Patel's October 2025 decision to terminate Plaintiff's employment. *See Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) ("Temporal proximity can indeed support an inference of causation, but only where the two events are very close in time.").

Nor does the Amended Complaint plausibly allege that Director Patel knew of the actions that Plaintiff frames as protected Title VII activity, much less that such activity motivated the alleged disparate treatment or challenged decision. Plaintiff's opposition attempts to fill that gap with speculation, asserting that Director Patel simply must have known of Plaintiff's advocacy efforts because those efforts were prominent within the FBI (years ago) and it would "suspend[] disbelief" to conclude otherwise. *See* ECF No. 18, Pl. Opp. at 21–22. But unvarnished speculation cannot substitute for well-pleaded facts to establish a causal connection. It is not sufficient to establish a retaliatory motive

11

by relying on conclusions or merely pointing to the other elements of a retaliation claim without alleging facts connecting them.

Plaintiff's other arguments in opposition are similarly unavailing. Plaintiff's remaining pretext arguments fail for the reasons already discussed above. *See supra* at 8. Also, the fact that Director Patel fired Plaintiff "a half year after Defendant Patel took office" has no relevance here; six months is a considerable amount of time, and this case bears no similarity to *Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105, 136 (D.D.C. 2025), where a court found that temporal proximity of *one month* between the Chairman taking office and initiating an investigation against the plaintiffs supported an inference of retaliatory animus, or *Templeton v. First Tenn Bank*, 424 F. App'x 249 (4th Cir. 2011), where the Fourth Circuit found that there were no opportunities to retaliate against the plaintiff until she sought reemployment two years after her protected activity. Here, by contrast, Plaintiff identifies no intervening event that could reasonably support an inference of retaliatory animus during the six-year period between the alleged protected activity and his termination, including the six months between when Director Patel took office and when Plaintiff was terminated.

## II.    Plaintiff's Fifth Amendment Claims Should Be Dismissed

Plaintiff largely sidesteps Defendants' principal argument against his Fifth Amendment claims: that Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment and therefore precludes Plaintiff's parallel constitutional claims. *See Brown v. GSA*, 425 U.S. 820, 829 (1976). Plaintiff instead devotes much of his opposition to arguing that Defendants have, in other (unidentified) litigation, asserted that Article II may supersede certain statutory restrictions on the President's removal authority. ECF No. 18, Pl. Opp. at 24. Plaintiff suggests that he

12

asserted Fifth Amendment claims only as an alternative to his Title VII claims if Defendants were to successfully invoke Article II authority as a defense to Plaintiff's Title VII claims. *See id.* But neither the Amended Complaint nor the procedural history supports that characterization, considering that Plaintiff asserted Fifth Amendment claims before adding his Title VII claims to this case. *Compare* ECF No. 1 *with* ECF No. 15-2.

Plaintiff's effort to rebut an Article II defense that Defendants have never asserted should not allow him to maintain claims that are unavailable as a matter of law. Defendants have not invoked Article II in this case or argued that Title VII is unconstitutional as applied to Plaintiff's claims. Plaintiff's effort to preserve his Fifth Amendment claims therefore rests on a hypothetical defense that Defendants have not asserted. That is not a basis for maintaining otherwise precluded constitutional claims. Whatever arguments Defendants may have advanced in unrelated litigation have no bearing on whether Title VII supplies Plaintiff's exclusive remedy here. Plaintiff identifies no authority permitting a plaintiff to avoid Title VII preemption simply because the government has taken a different legal position in another case. Plaintiff cites no authority requiring Defendants to disclaim legal theories they have not asserted before the Court may dismiss claims that are independently foreclosed by binding precedent. *See, e.g.*, *Kizas v. Webster*, 707 F.2d 524, 541–43 (D.C. Cir. 1983) (rejecting Fifth Amendment claims brought by FBI employees because Title VII provides the exclusive remedy); *Richardson v. Wiley*, 569 F.2d 140, 141 (D.C. Cir. 1977) (per curiam) (holding

13

that a federal employee covered by Title VII may not sue under any other federal statute or under the Fifth Amendment).[2]

The same problem applies to Plaintiff's Appointments Clause and ultra vires theories. The Amended Complaint alleges that if Defendants were to invoke Article II removal authority, Director Patel's termination decision would constitute a "legal nullity." ECF No. 15-2, Am. Compl. ¶¶ 88–93. But Defendants have invoked no such authority. Plaintiff therefore asks this Court to resolve an abstract constitutional question based on a defense Defendants have never raised. Federal courts do not issue advisory opinions, and Plaintiff's contingent claims should not be allowed to remain.

### III.    Plaintiff Has Not Stated a Claim for Mandamus Relief

Plaintiff's response also confirms that his mandamus claim fails. Mandamus is an extraordinary remedy available only where a plaintiff establishes a clear and indisputable right to relief, a plainly defined and nondiscretionary duty owed by the defendant, and the absence of any adequate alternative remedy. *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Plaintiff fails each element required for mandamus relief. *See* ECF No. 16, Def. Br. at 15–16. While Plaintiff disputes whether he has satisfied two of the three prongs, most notably, he does not meaningfully respond to Defendants' argument that he has failed to identify any plainly defined, nondiscretionary duty. *See* ECF No. 18, Pl. Br. at 25–26.

Plaintiff's references to case law allowing "an otherwise-well-pleaded mandamus claim" to be maintained in the alternative to a plausible APA claim at the motion to dismiss stage are inapposite. *Id.* (quoting *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d

---

[2] Even if not dismissed based on preclusion, Plaintiff's Fifth Amendment claims cannot be maintained for the same substantive reasons as his Title VII claims.

181, 199–201 (2024)). Defendants are not arguing for dismissal of Plaintiff's mandamus claim simply because there is an alternative claim for relief currently available in this case. Rather, Defendants seek dismissal because the alleged facts plainly do not support a critical element of a mandamus claim.

Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002). Because Plaintiff has not identified any such "ministerial" duty that has been violated in this case, he cannot maintain a mandamus claim in this case, whether as a primary argument or a fallback. The claim should therefore be dismissed.

## IV.    Plaintiff's Request for Back Pay Should Be Dismissed

Finally, Plaintiff's request for back pay should be dismissed because Plaintiff fails to maintain cognizable Title VII claims. A claim for back pay must fail unless Congress has waived sovereign immunity for the particular claim maintained. *See Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (en banc). Although Congress waived sovereign immunity for back pay in Title VII cases involving intentional discrimination, *see* 42 U.S.C. § 1981a(a)(1), even if Plaintiff is correct that *Babb* permits his Title VII claims to proceed on something less than traditional but-for causation, that would not entitle him to retrospective monetary relief. *See, e.g.*, *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) ("[R]elief in a mixed-motive case is limited to 'declaratory relief,' certain 'injunctive relief,' and certain fees and costs if the defendant 'demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor.' By contrast, a plaintiff who establishes but-for causation may recover damages, as well as declaratory and injunctive relief." (citations omitted)); *see also Babb*, 589 U.S. at 402 (holding that a plaintiff cannot obtain all forms of relief that are generally available under

15

the ADEA, "including hiring, reinstatement, backpay, and compensatory damages," without but-for causation, *i.e.*, "without showing that a personnel action would have been different if age had not been taken into account").

Further, if the Court dismisses Plaintiff's Title VII claims entirely, as is appropriate in this case, Plaintiff's remaining constitutional claims cannot support his request for back pay and other monetary relief. The unavailability of back pay and other monetary relief in the absence of valid Title VII claims appears uncontested in Plaintiff's opposition. *See* ECF No. 18, Pl. Opp. at 27 n.3. Defendants discussed at length the reasons why the Back Pay Act, 5 U.S.C. § 5596, does not supply an independent waiver of sovereign immunity for damages in cases brought to district court for the adjudication of constitutional claims. *See* ECF No. 16, Def. Br. at 18–19 (citing *United States v. Fausto*, 484 U.S. 439 (1988); *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008)). Plaintiff's opposition does not address the holding in these cases that a district court adjudicating constitutional claims is not an "appropriate authority" within the meaning of the Back Pay Act. Nor does Plaintiff's opposition contest that Plaintiff is excluded from the Civil Service Reform Act's remedial scheme, *see* 5 U.S.C. § 7511(b)(8), and thus no determination by an "appropriate authority" within the scope of the Back Pay Act can be made. *Compare* ECF No. 16, Def. Br. at 18–19, *with* ECF No. 18, Pl. Opp. at 27 n.3. Rather, Plaintiff only cites a case holding that the district court adjudicating a *Title VII case* is an "appropriate authority" within the meaning of the Back Pay Act, 5 U.S.C. § 5996(b)(1)–(2). ECF No. 18, Pl. Opp. at 27 n.3 (citing *Brown v. Sec'y of the Army*, 918 F.2d 214, 216, 218 (D.C. Cir. 1990)). *Brown* is inapposite. It addresses the authority of a district court adjudicating a successful Title VII action—not

16

whether a plaintiff whose Title VII claims have been dismissed may recover back pay on constitutional claims alone. That question is controlled by *Hubbard*.

## CONCLUSION

For the reasons set forth herein and in Defendants' initial memorandum in support, the Court should grant Defendants' partial motion to dismiss.

Dated: July 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ *Natalie M. Villalon*
NATALIE M. VILLALON
DC Bar No. 90015127
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 860-9963
Email: Natalie.M.Villalon@usdoj.gov

*Counsel for Defendants*